## KEEN v. BUTTERWORTH. *

### No. 17101.

Court of Appeal of Louisiana. Orleans.

Dec. 12, 1938.

James G. Schillin, of New Orleans, for appellant.

T. S. Walmsley and Drew Linard Smith, both of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Sam B. Keen, filed this suit for recovery of the face amount, together with interest and attorney fees, of a promissory note executed by the defendant, A. B. Butterworth, to plaintiff's order on June 1, 1931, for the sum of $561.95. The defendant admits signing the note but asserts that he is not liable because the obligation was given to plaintiff in payment of a gambling debt which he incurred in a dice and poker game.

In the district court, there was judgment in favor of the plaintiff as prayed for. The defendant has prosecuted a suspensive appeal from the adverse decision.

The circumstances, which led to the execution of the note by the defendant, are as follows:

During the year 1931, the plaintiff and the defendant were members of the Pickwick Club, which is one of the prominent and exclusive gentlemen's clubs of the City of New Orleans. At that time, it was the custom of some 20 or 30 members of that organization to engage, each afternoon, in a table stakes stud poker game and on many occasions the participants in this game would play dice.

The club did not sanction the playing of dice by its members but, notwithstanding this, it is undisputed that its employees kept separate sheets of the winners and losers in the dice game and that, at the end of each week, a settlement between the parties participating in these games would be made. The parties engaged in the playing of dice and poker at the Pickwick Club did not gamble with cash but used chips, which were supplied by the club. One of the negro employees of the club acted as the dealer for the participants in the poker game and this employee also kept a daily account or sheet, showing the winners and losers of the game and the respective amounts of their gains and losses. A similar account was kept for the dice game. It was understood between the members that

*Rehearing denied Jan. 10, 1939.

no settlement was to be had of the daily games but that, at the end of each week, a recapitulation was to be made of all the daily dice and poker game sheets and that the ultimate losers during the preceding week would give the club's manager cash or a check for the amount of their weekly losses. Upon receiving these payments, the manager would, in turn, distribute the amount of money coming into his hands among the winners of that week. Thus, it will be seen, that, by such procedure, a final settlement between the participants in the games was effected at the end of each and every week.

It is conceded by both parties to this suit that the Pickwick Club had nothing whatsoever to do with the operation of the dice and poker games other than to supply the cards, dice, chips, etc., and to permit its employees to facilitate members in the settlement of their accounts; that the winners in the games had no right to look to it for payment of their gambling profits and that the losers were likewise not responsible to it for their losses.

During the last week of May 1931, the plaintiff and defendant played in the dice and poker games being carried on at the club. The defendant states that, during that week, he had won some $400 playing poker and that that amount had been credited to him on the poker sheet. He also declares that his luck in the dice games was very bad; that, as a result of a certain dice game, which started on a Wednesday afternoon and ended late that night, he lost approximately $1,500 and that Keen was not only a participant in that game but that he won a substantial portion of the $1,500 loss. He further asserts that, at the end of the week, he owed the winners in the dice and poker games a net amount of approximately $1,000 and that he did not have sufficient resources to liquidate his indebtedness to them.

Plaintiff was admittedly a substantial winner in the dice and poker games, which were played during the last week of May 1931. He states that he does not remember the amount of his winning but it is certain that it was at least the sum of $561.95, which he was unable to obtain in cash from the defendant.

When the results of the week's play had been tabulated, it revealed that the defendant was a net loser of a sum close to $1,000 and that Keen, H. P. Moran and Allen Douglas had a profit as a result of their operations. The defendant, being financially unable to take care of his loss, requested the Assistant Manager of the club to see the winners and to ascertain whether they would accept his notes in payment of his obligation. Accordingly, the assistant manager contacted Messrs. Keen, Douglas and Moran and (after some reluctance on the part of Keen) these gentlemen agreed to accept the defendant's promissory notes in settlement of his loss. Butterworth, thereupon, signed and delivered to Keen the note for $561.95 herein sued upon, another note to Moran for $167.30 and another to Douglas for $228.95. At the time these gentlemen received these notes from Butterworth, each of them delivered a letter to the latter wherein they stated that they agreed to hold the respective notes and not to deposit them for collection or place them in the hands of an attorney for collection as long as the semi-annual interest payable thereon was remitted by him. These letters were all of the same tenor, except that the plaintiff provided that his agreement would not be binding upon his widow and heirs.

The question therefore arises whether, under the circumstances above set forth, the note in suit was given by the defendant to the plaintiff in settlement of a gambling transaction. If it was, it is obvious that Keen cannot recover because Art. 2983 of the Civil Code provides:

"The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.

"And as to such games, the judge may reject the demand, when the sum appears to him excessive."

And Art. 2984 declares: "In all cases in which the law refuses an action to the winner, it also refuses to suffer the loser to reclaim what he has voluntarily paid, unless there has been, on the part of the winner, fraud, deceit, or swindling."

The playing of dice is a penal offense under Act 70 of 1908 and, under Ordinance 4034 as amended by Ordinance 3376 of the Commission Council of the City of New Orleans, gambling with cards is punishable by fine and imprisonment except in a regular chartered club approved by the District Attorney and Mayor of that City. (The Pickwick Club has not been shown to be chartered for the operation of poker

games.) Moreover, the Constitution of this State, by Art. 19, Section 8, denounces gambling as a vice and prescribes that the Legislature shall pass laws to suppress it.

The plaintiff in the instant case does not seriously pretend that the consideration of the note sued upon represents anything other than money won by him while engaged in an unlawful game of chance and it follows that, in view of the pertinent articles of the Civil Code, the constitution and statutes of this state and the ordinances of the City of New Orleans, the courts will not countenance the enforcement of such an obligation.

His counsel, however, insist that, while it is true that the amount of the note represents at least part of the money Keen won in dice and poker games at the Pickwick Club, he did not win it from the defendant but from other persons engaged in those games at times when Butterworth was not a participant therein and that, in order to save Butterworth from further embarrassment (he being unable to meet his gambling losses of that particular week), he lent him the sum of $561.95 so that the latter might liquidate the obligation he had incurred to other members of the club.

This postulation is not meritorious as it is based upon a premise which is not supported by the evidence adduced in the case. The testimony, taken as a whole, clearly reveals that it was never contemplated by the 30 men engaged in the poker and dice games at the Pickwick Club that the winner on a particular day should collect his winnings from the specific member or members who lost in that game. On the contrary, it is shown that the accounts between the participants of the games were never liquidated until the end of the week and there was at least a tacit understanding between the members that the winners of the preceding week's play would collect from the losers of that week irrespective of whether these winners participated in the same gambling transaction as did the losers. In other words, it was left to the honor of all of the members engaging in the gambling games at the club to remit their weekly losses to the weekly winners whether or not they had actually played in the same contest with those particular winners. For instance, if Keen should win $1,000 from Douglas on a Monday and Douglas, on the next day, should win $1,000 from Butterworth, Douglas, at the end of the week when this settlement was made, would owe nothing and Keen would look to Butterworth, the ultimate loser, for payment of the obligation.

Mr. Roser, the assistant manager of the club, while on the witness stand, was asked to explain the method adopted by the club in case one of the participants in the game failed to pay his losses at the end of the week. He stated that, under such circumstances, the cash received from the paying losers would be prorated among the winners of the week and that those winners would have to make some arrangement with the loser, who was unable to pay, to take the latter off the sheet. The expression "taken off the sheet", which is frequently used by the witnesses in their testimony, means nothing more than that a winner could waive his right to a proportion of the cash paid in by other losers and have the nonpaying loser agree to pay him the amount of the loss at some future date.

Keen, in his testimony, would have us believe that, when Butterworth could not pay his gambling losses at the end of the particular week in question, he (Keen) waived his right to take his proportion of the cash paid in by the other losing members and effected a technical loan to Butterworth of his winnings in order that Butterworth might pay the losses which Keen says were due by him to other members of the club. While the plaintiff's evidence is very vague on this point, since he cannot remember the persons from whom he won the money or the amount of his winnings, we cannot see that he is or should be in a more favorable position even though we assume that his contention is true. To illustrate—suppose the settlement sheet at the end of the week showed that Keen and Douglas had won $1,000 each; that Butterworth had lost $500 and that Moran had lost $1,500. The latter pays in cash but Butterworth is unable to settle. Under the method adopted by the club, Keen would be entitled to $750 or one half of Moran's losses and Douglas to the other half. Under these circumstances, suppose Keen would permit Douglas to be paid his entire winning of $1,000 out of the cash on hand and that Keen should "take Butterworth off the sheet" by accepting the latter's note for his losses. Such procedure would merely be tantamount to the extension of credit by Keen to Butterworth and cannot be used as an argument for the purpose of enhancing the validity of the unlawful enterprise.

 It should be borne in mind that Keen has never given one cent of cash to Butterworth in consideration of the issuance of the note. If we presume that he could have received payment of his gambling winnings in cash and that he was willing to forego this opportunity by substituting Butterworth as his debtor, he did not obtain any greater right, by so doing, than he had against the person who actually lost to him and whose money he did not see fit to accept. For, in substance, what difference does it make whether Butterworth lost to plaintiff in any particular game, since the latter, admittedly, is seeking recovery of money he won in an unlawful transaction which, in truth, has never been paid. In any case, the portals of the court are closed to him. Art. 2983, C.C.

The case of Brand v. Evans, 7 La.App. 205, cited by plaintiff's counsel, bears no resemblance to the case at bar. for, there, while the plaintiff lent the defendant money in order that the latter might pay certain gambling losses, it clearly appeared that the plaintiff was not in any way connected with the reprobated enterprise. And the same is true of the case of Clemons v. Succession of Johnson, 10 La.App. 230, 120 So. 664. Of course, if the facts presented herein showed that Keen lent Butterworth money to pay the latter's gambling losses, Butterworth could not be heard to say that Keen had won the money lent to him at gambling or that he used such borrowed money for an unlawful purpose. But here it is clearly shown that the money which Keen seeks to recover was won by him in a gambling game in which both he and the defendant participated and, further, that there was a tacit agreement, between all of the persons engaged in the unlawful enterprise, that the weekly losers would pay the weekly winners irrespective of whether the parties participated in the same game or not.

 Finally, plaintiff maintains that, at all events, part of the consideration of the note is valid because it represents purchases of cards, drinks, tobacco, lunches, etc., by Butterworth from the club. The evidence fails to sustain this contention. It is shown that, while a poker or dice game was in progress, the members participating therein would order cards, drinks and other refreshments and that each member was charged by the club with his prorata portion of the purchase price thereof. This does not indicate that any part of the note represents the defendant's indebtedness to the Pickwick Club for purchases made during the games. And, even though such were the case, the cards and refreshments so purchased were connected with the main unlawful enterprise to such an extent that they were inseparable from it. Moreover, should we assume that these purchases could have been segregated, the plaintiff's recovery would necessarily have been limited to the price of defendant's purchases during the week the games were being held for it is well established that "illegality of part of the consideration for a bill or note will render the entire instrument unenforceable, unless the legal part may be separated from the illegal part." See 10 Corpus Juris Secundum, Bills and Notes, § 157, p. 632; also, 27 Corpus Juris, Sec. 298, Page 1071, and McLean v. Elliot, 26 La. Ann. 385.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is reversed and that the plaintiff's suit be and it is dismissed at his costs.

Reversed.