PROVOSTY, J.
The petition in this case reads, as follows:
“That on the 15th day of December, 1907, they, the plaintiffs, entered into a contract of ordinary partnership, with Odie Seabaugh, also a resident of the parish of Ouachita, state of Louisiana, under the terms of which the said Seabaugh contributed and furnished a room and fuel, and they contributed their time, work, and skill playing games of skill and hazard, namely draw poker and stud poker, in said room which adjoined the saloon of defendant in the city of Monroe, Louisiana, the profits of which were to be divided equally among themselves, after deducting all proper and necessary expenses. That under these arrangements the enterprise continued up to and including the month of January, 1909; that the receipts from said business amounted to over seven thousand dollars and were from day to day deposited with the said Seabaugh for safe-keeping, and as depositary of the funds belonging to and taken in by petitioners; that necessary expenses were paid out of the profits of said business by the said Seabaugh on the orders of petitioners, and from time to time petitioners drew small amounts for their individual uses and benefits, but that the remainder of their shares of said profits, amounting to about three thousand eight hundred dollars ($3,800.00) were left with and retained by the said Seabaugh temporarily and for their account; that when the business or enterprise was discontinued they called upon him for an accounting and delivery of said money, which he failed and refused to make to petitioners, notwithstanding frequent amicable demands. Petitioners show that they are entitled to an accounting and liquidation of said partnership.
“Wherefore petitioners pray for due and legal service hereof upon the said Odie Seabaugh; that he be cited to answer hereto according to law; that on trial hereof there be an accounting and liquidation of the affairs of said partnership; that the defendant be ordered to pay over to petitioners what is found to be due according to law and equity. And pray for all orders and decrees necessary in the premises, and for costs and general relief.”
To this petition the defendant interposed an exception of no cause of action. The trial court sustained the exception, and dismissed the suit, and the plaintiffs prosecute this appeal.
The learned counsel for plaintiffs contend as follows:
“It is alleged in plain language in the petition, and we argue here, that plaintiffs and defendant entered into a partnership for the purpose of gambling at cards by the playing of draw poker and stud poker for the profit there is in it. This is not prohibited by law. True it is that the Constitution declares that gambling is a vice and the Legislature shall pass laws to suppress it, but so far the Legislature has passed no law against the playing of draw poker or stud poker. There is legislative enactment against conducting a banking game, but nothing against playing poker.
“The defense, arguendo in the trial court was that it is against public policy and contrary to good morals, and the court should not hear this kind of ■ case or enforce any rights of any of the parties. This view was sustained by the judge, and the case dismissed.
“We contend there is error in the judgment of the trial court. The allegations of the petition must be taken as true for the purposes of the trial of the exception. Plaintiffs’ contention is that all relations between the parties have ceased, in so far as the partnership is concerned ; that the profits and funds have been deposited with defendant as depositary and for safe-keeping, and that he, defendant, wrongfully refused to return .the money, or any part of it upon demand.
“As between the parties, the contract is a thing of the past. It is an executed contract, and defendant cannot profit, and keep to himself these funds which he holds as depositary, by pleading his own turpitude, or the immorality of the contract under which he received the funds.
“In the case of Antoine v. Smith, 40 La. Ann. 560, 4 South. 321, this court held:
“ ‘Where the cause of a contract sought to be enforced is unlawful and opposed to good morals and public policy, there is no right of action in the courts, for either party suing through it, to enforce it. But after the reprobated transaction has become an accomplished fact, neither party can interpose such illegality or turpitude as a defense.’
“Also, in the case of Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732, whieb was freely cited and relied upon in the case just cited, in an exhaustive discussion of the principles involved, the Supreme Court of the United States said:
“ ‘Where soldier’s claims for land warrants had been illegally purchased by a partnership, with money advanced by one partner for that purpose, and had been converted into land warrants, and the warrants had been sold or located and there remained in the hands of the other partner, lands, money, notes, and mortgages, results of the illegal partnership business, a bill filed by the partner furnishing the funds against the other for an accounting of the funds will be sustained.’
“And again, in the case of Kinsman v. Parkhurst, 18 How. 289, 15 L. Ed. 385, that same tribunal held:
“ ‘When money has been received by an equal or joint owner, by force of a contract which was illegal, he cannot protect himself from accounting for what was so received by setting up *445 the illegality of the transaction in which it was paid to him.’
“See, also, Cyc. vol. 20, p. 950.”
[1] That the partnership alleged in the petition in this case was illegal, null, and void, and could not give rise to a cause of action, there can he no serious question. By article 2804, Civ. Code, “All partnerships are null and void which are formed for any purpose forbidden by law or good morals.” This partnership was for the running or conducting of a gambling game; a purpose, -which, though perhaps not expressly forbidden by law, is certainly against public policy and good morals. The Constitution of this state, article 188, declares “Gambling is a vice, and the Legislature shall pass laws to suppress it.” Our Civil Code, provides:
“Art. 1898. An obligation with an unlawful cause can have no effect. Art. 1895. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order. Art. 2983. The law grants no action for the payment of what has been won at gaming or by a bet.”
Our Code of Practice provides;
“Art. 19. Obligations contrary to justice, good faith, or good morals, such as those by which a reward is promised to another to commit a crime, give no right to either party to enforce the execution of the contract.”
Plaintiffs’ learned counsel frankly admit that draw poker and stud poker are gambling games. These constitutional and statutory provisions announce the public policy of this state in no uncertain or^ doubtful terms on the subject of gambling. The word “vice” is defined by Webster’s New International Dictionary to be:
“A moral fault or failure; especially, immoral conduct or habits, as in the indulgence of degrading appetites; state of being given up to evil conduct, or habit; depravity; wickedness; corruption.”
Now a thing which is declared by the Constitution to be all this is certainly against good morals. In fact, the proposition that gambling is against good morals, recognized as it is the world over, needs no reinforcement by argument. However, the following extract from the decision of this court in the case of Britt v. Davis Bros., 118 La. 598, 43 South. 248, is apposite:
“Plaintiff alleges that he was employed to manage a cardroom, maintained in the rear of defendant’s barroom in Shreveport, and to supervise and wait on games of poker played there, furnish the players with cards, chips, etc., and see that they paid for the use of the conveniences so furnished, and that he was to-get one-half the net profits in lieu of salary; that his employment was by the year, but that he was discharged without cause at the end of 10 weeks, and is entitled to recover $5,216.40 as the amount that he would have made during the remainder of the year. The suit was dismissed upon an exception of ‘no cause of action,’ and, we think, properly dismissed. The object of the contract was the maintenance of an establishment for the indulgence of a vice, denounced as such by the Constitution of the state. The contract was therefore morally impossible and void, and no damage can be recovered for its nonfulfillment. Civ. Code, arts. 1891, 1892. 1893, 1895. The fact that plaintiff was not obliged by his agreement to participate in the games may have been to his advantage in some respects, but it does not improve his standing in court. Cummings v. Saux, 30 La. Ann. 207; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468. Judgment affirmed.”
[2, 3] If the statement made in the argument of plaintiffs’ learned counsel that the suit is based on a contract of deposit, that the defendant is sued as a depositary were correct; or, in other words, if the profits of the partnership had been reduced to possession by the plaintiffs, and then deposited with defendant for safe-keeping as so much money belonging to plaintiffs — a very different ease would be presented from that which is actually presented. But the profits in question were not only never reduced to possession by plaintiffs, and then deposited with defendant as so much money belonging to plaintiffs, but their amount has never been ascertained, and no settlement has ever been made of the partnership. And, so true is this, that the suit is for settlement of the partnership. And it has been brought in that form not inadvisedly, since it was the *447 only action plaintiffs had. Nothing is better settled in our law than that a partner has no cause of action against his partner for any definite sum as representing his share of the profits of the partnership, but only for a settlement of the partnership. Seelye v. Taylor, 32 La. Ann. 1115; Hart v. McDonald, 52 La. Ann. 1686, 28 South. 169; Reddick v. White, 46 La. Ann. 1198, 15 South. 487. The suit is, then, for a settlement of this gambling partnership, and must be dealt with as such.
Reviewing the authorities cited, supra, by plaintiffs’ learned counsel, we find that the case of Antoine v. Smith, 40 La. Ann. 560, 4 South. 321, is not in point. In that case the plaintiff sought to recover certain shares of stock which he alleged that for convenience he had put in the name of one Geo. L. Smith, who had transferred them to D. D. Smith, the defendant, and the defendant pleaded that the transactions by which plaintiff had acquired the stock were illegal, and that therefore plaintiff was never owner of the stock. The case was that of a bailee contesting the title of .his bailor. Moreover, the parties had made a compromise, and the court enforced the compromise; and all that may have been said by the court in any other connection was mere obiter dictum
The court there cited the same case, Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732, cited by plaintiff, supra.
That decision may be said to have been repudiated and overruled by the august tribunal that rendered it. In McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, 1128, we find the following:
“The transactions which were illegal, the court said, had become accomplished facts, and could not be affected by any action which the court might take. The cases of Sharp v. Taylor [2 Phil. ch. 801], Tenant v. Elliott [1 Bos. & P. 2], Farmer v. Russell [2 Bos. & P. 295], and McBlair v. Gibbes [17 How. 232, 15 L. Ed. 132] were cited as authority for the proposition.
“We have already adverted to each of them, and we admit it is quite difficult to see how, with the exception of Sharp v. Taylor, the principle upon which they were decided could be applied to the case then before the court.
“There is a difference between the ease before us and that of Brooks v. Martin, because in the latter ease the fact existed that the transactions, in regard to which the cause of action was based were not fraudulent, and they related in some sense to private matters, while in the case before the court the entire contract was a fraud and was illegal, and related to a public letting by a municipal corporation for work involving a large amount of money, and in which the whole municipality was vitally interested. It may be difficult to base a distinction of principle upon these differences. We do not now decide whether they exist or not. We simply say that, taking, that case into due and fair consideration, we will not extend its authority at all beyond the facts therein stated. We think it should not control the decision of the case now before us.”
The other case cited, by plaintiffs, supra, that of Kinsman v. Parkhurst, 18 How. 289, 15 L. Ed. 385, was where the parties had engaged as partners in the manufacture and sale of a patented article, and one of the partners refused to account to the other for profits received, on the ground that the patent was not valid. The court very properly said that:
“The invalidity of the patent does not render the sale of the machine illegal, so as to taint with illegality the obligation of the defendant to account.”
We have not had time to verify the authorities upon which 20 Cyc. 950, referred to by plaintiffs, supra, is founded. It is there said that:
“When a wagering contract has been executed and its fruits paid to the agent or partner of the winner, the recipient of the fund cannoc shield himself by setting up the vice of the original transaction.”
There can be no doubt that eases off this kind must depend largely upon their peculiar facts. In 9 Cyc. 559 we find the following:
“Theoretically, it is said by a recent writer, there is a distinction between enforcing an illegal contract and enforcing a duty not springing from the contract, but arising solely from the receipt of the money or goods. But practically *449 it is impossible to reconcile tbe actual decisions on this point.”
In 30 Cyc. 356 we find the following:
“If a partnership is formed for the prosecution of an illegal business, or for the conduct of a lawful business in an illegal manner, the courts will refuse to recognize its existence, either by enforcing its claims against others or by compelling either partner to account to the others for capital or profits in his hands.”
Among the decisions cited in support of that proposition is that of McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, cited above. In that case the parties secured a public contract by collusive means, and, after the contract had been fully executed and one of the partners had received the profits, the other partner brought suit for an accounting and for his share of the profits. The case was elaborately considered, all the leading cases reviewed, and the conclusion reached that the action could not be maintained. There is no reason why that decision should not be accepted as absolutely conclusive in cases of this kind.
Judgment affirmed.
SOMMERYILLE, J., takes no part herein.