(106 So. 561)

No. 25607.

BAGNERIS v. SMOOT.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

**I. Appeal and error ⬤⟹994(3)—Credibility of witnesses held for trial judge.**

In action on note, where there was sharp conflict in evidence, and while on face of record Supreme Court might assume that parties were entitled to equal credibility, decision of that question was peculiarly within province of trial judge.

**2. Gaming ⬤⟹49(3)—Notes held under evidence to have been in settlement for checks given in gambling transaction.**

Notes *held* under evidence to have been given to take up dishonored checks given in settlement for losses at roulette, it being a game of chance within Civ. Code, art. 2983, which denies action at law for recovery of winnings thereon.

**3. Gaming ⬤⟹19(1)—Courts will not entertain demands for collection of notes given for gambling debts.**

Courts will not entertain demands for collection of notes or other obligations given for a gambling debt, or for cause or consideration which is unlawful and contrary to public order and good morals.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Columbus Reid, Judge.

Action by Louis Bagneris against J. E. Smoot. Judgment for defendant, and plaintiff appeals. Affirmed.

Prowell, McBride & Ray, of New Orleans, and W. S. Rownd, of Hammond, for appellant.

Kemp & Buck, of Amite, for appellee.

THOMPSON, J. [1] This suit is on two promissory notes for $1,000 each, with interest and 10 per cent. attorney fees. The notes were executed on October 14, 1919, and payable in 45 and 90 days, respectively.

The defendant admits signing the notes, but denies legal liability for the reason that the consideration for which said notes were given was a gambling debt due the plaintiff by the defendant.

After hearing the testimony on the trial of the case, the judge sustained the defense and rejected the plaintiff's demand.

We have carefully examined and considered the evidence and fully concur in this finding of fact.

There is a sharp conflict between the evidence of the plaintiff and the evidence of the

defendant, and while upon the face of the record this court might assume that the parties were entitled to equal credibility, still the decision of that question was peculiarly within the province of the trial judge, who had the witnesses before him and who was in a better position to say which one was the more worthy of belief than we are with only the evidence as reduced to writing before us.

We may say, however, in further justification of our conclusion to affirm the judgment, that the testimony of another witness besides the defendant and certain circumstances connected with the execution of the notes strongly corroborate the testimony of the defendant.

[2] The record shows that the plaintiff operated a butcher shop, saloon, and restaurant in the parish of St. Bernard during the late summer and fall of 1919. At the same place and in connection with his other business, the plaintiff conducted a gambling house where roulette and other games of chance were played.

The defendant Smoot, a lumber man, was introduced to the plaintiff by their mutual friend Fred Wilson in the early fall of 1919, and thereafter Smoot was a frequent visitor to the plaintiff's place of business. On the last visit, Smoot in playing the game of roulette lost to the house $3,600 for chips which he had purchased and which are used in operating the game. In payment of this amount the defendant gave the plaintiff one check for $500 and one for $3,100. The first check was payable to the plaintiff and the second to the defendant's own order and indorsed by him.

The first check was paid after some delay on account of irregularity in the signature of the drawer.

The second check was not paid and was surrendered to the defendant at the time he executed the two notes sued on.

There can be no room for serious doubt that the two notes sued on, together with a certain duebill not here involved, were given to take up the dishonored check for $3,100. And it is equally clear that the debt for which the check was given represented the price of the roulette chips.

The game of roulette is described by a witness as follows:

"The first thing, it consists of a wheel, with 34 little stalls in it; some are red, some are black and two are green. They have these little stalls numbered. This is set down in a table and there are scars in the table to represent the numbers on the wheel, red, black, and green, and the operator, or dealer, takes the wheel and spins the wheel one way, and then spins it in the opposite direction. The players then bet whatever the amount is, by putting on these figures. There are 34 numbers and two odds, and if the wheel falls on the odds the dealer gets the money, or if it falls on a pocket in which no bet is placed then the dealer also gets the money, or if it falls in your pocket, you get it, and then do it all over again."

It is shown that the player has about 1 chance in 34 or 36 to win.

The game is clearly one of chance and is a gambling game within the intent and meaning of the rule which denies an action at law for the recovery of what has been won at gaming or by bet. C. C. art. 2983.

[3] Courts of justice are not open to suitors and will not entertain demands for the collection of notes or other obligations which have been given for a gambling debt or for a cause or consideration which is unlawful or contrary to public order and good morals. Sampson v. Whitney, 27 La. Ann. 294; Bank of New Orleans v. Franton, 22 La. Ann. 462; Martin v. Seabough, 128 La. 442, 54 So. 935.

For the foregoing reasons, the judgment appealed from is affirmed.