Second Circuit

No. 3343

———

CLEMONS v. SUCCESSION OF JOHNSON

———

(March 12, 1929. Opinion and Decree.)

———

W. Peyton Cunningham, of Natchitoches, attorney for plaintiff, appellee.

Rusca and Cunningham, of Natchitoches, attorneys for defendant, appellant.

ODOM, J. Mrs. Julia Johnson was appointed administratrix of the succession of her husband, James J. Johnson, and filed a provisional account. The plaintiff opposed the account on the ground that she had not allowed his claim for $558.00, less a credit of $258.00.

Opponent's claim is evidenced by a promissory note signed by the deceased. The administratrix admitted in answer that the note was signed by the deceased, but alleged that it was given for a gambling debt and was, therefore, without a valid, legal consideration.

There was judgment in the lower court for plaintiff ordering the administratrix to allow plaintiff's claim on the account as a debt of the succession, and she has appealed.

### OPINION.

The only issue involved is whether the note was given for a gambling debt. Plaintiff testified that he loaned the deceased the money for which he took the note, the deceased stating at the time that he needed the money and did not want to take that amount out of his business; and, being asked where he got the cash which he says he advanced, he stated that he drew it from the bank. Plaintiff admitted that at the time he was operating the "Campbell's Club" where gambling was carried on, and that the deceased at times gambled there, but stated that it was a small game and no one could lose a great deal. He testified that he delivered the money to Johnson and took his note at a colored restaurant in the city of Natchitoches, in the presence of a colored man, named George Quinn, and a colored girl, named Willie Woodard. George Quinn testified that the deceased on the morning that the note was given, told him to tell Mr. Clemons to meet him at the restaurant that afternoon; that the two met and called for a pen and ink, and that he saw Mr. Johnson writing something, but he did not know whether the note was signed or not; and that while the two were together, there was a "big roll" of money in plaintiff's hands, but that he did not see plaintiff give it to Johnson.

The girl, Willie Woodard, testified that she got the pen and ink for Clemons, saw Johnson sign something and saw the plaintiff, Clemons, with a large roll of "green backs", and saw him give it to Johnson who walked out with it.

T. G. Barnes, cashier of the Exchange Bank, testified that according to the books of the bank, Clemons drew two checks on the bank, one for $125.00, and one for $682.00, which were paid by the bank and charged to him on March 16, 1927, which was the date on which the note was given, the check for $125.00 being in favor of J. O. Thomas, and the one for $682.00 being in favor of the bank—Clemons presumably drawing the cash, Barnes stating that he owed the bank nothing.

Against this, we have the testimony of

Mrs. Johnson who says that her husband died in July, after having given this note on March 16, and that for several months previous to his death, he had been gambling and drinking heavily—so much so that she found it necessary to take charge of his business; and it is admitted that within the six months prior to his death he had lost approximately $1800.00 in gambling houses, and that prior to that time, he had been a lender, not a borrower of money.

Joe Maggio, an employee and close friend of the deceased, testified that he had often gone, not only to the "Campbell's Club," but to other gambling houses, and carried the deceased away. Both Mrs. Johnson and Maggio testified that the deceased was in the habit of drawing checks to pay gambling debts, some of them payable to persons he did not owe, in order to keep his wife from knowing that he had lost at gambling.

Albert Winberg testified that at one time he had a note signed by the deceased, payable to E. E. Hawkins, who, it seems, ran a gambling house, and that deceased paid the note by installments.

George Himel, assistant cashier of the bank, testified that the deceased made a deposit in his bank on March 14, and on the 16, but did not state the amounts. According to the books of the bank, deceased had an overdraft of $100.60 on March 1, a balance of $125.42 on April 1, and a balance of $221.18 on March 16, the day the note was given; and on that day the bank paid his checks totalling $121.28. The books further show that on April 9, deceased had a balance of $5,221.32, which seems to have been the proceeds of a loan from the Merchants & Farmers Bank.

Plaintiff called E. E. Hawkins, who conducted a gambling house known as the "Columbia Social Club", out five miles from the city. He testified that on Saturday, March 12, 1927, four days before deceased signed the note in controversy, he lost $558.75 at a game at his (Hawkin's) place, and that three or four days later, he paid the amount. This is the exact amount which plaintiff says he loaned deceased and for which he took his note.

We have referred to and given in substance the testimony of every witness who took the stand. Considering all of it, our conclusion is that Johnson, the deceased, lost at the "Columbia Social Club" in a gambling game, and that Clemons, the plaintiff, loaned him the money with which to pay that debt, and took the note in controversy.

While Clemons is a gambler, and conducted a gambling game at "Campbell's Club", he had no connection whatever with the club or the game in which deceased lost the money. The consideration for the note was money loaned. The debt due Clemons by the deceased was, therefore, valid.

If Clemons had won the money from Johnson, the consideration of this note would be invalid, for

"The law grants no action for the payment of what has been won at gaming, or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of gun and foot, horse and chariot racing." C. C., Art. 2983.

The fact that plaintiff loaned deceased money with which to pay a gambling debt, with which plaintiff was in no way connected does not render a note given for the money loaned void for the want of consideration. The consideration for the note sued on was money loaned, and the note is valid.

The judgment appealed from is correct, and is therefore affirmed, with costs in both courts.