99 So.2d 841 (1957)
Mary DOMINO
v.
Robert LA BORD.
No. 4528.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
Rehearing Denied February 3, 1958.
Writ of Certiorari Denied April 21, 1958.
*842 Blanchard & Blanchard, Morgan City, for appellant.
James R. Parkerson, Franklin, for appellee.
ELLIS, Judge.
After a careful consideration of the argument of counsel, the briefs herein, the record, and the written reasons given for judgment in this case by the learned District Judge in which he dismissed the suit of plaintiff at her cost, we find that in his reasons for judgment the Lower Court has correctly found the facts to be fatal to plaintiff's claim in two respects, viz., that the plaintiff did not give the defendant cash for the check she sues upon so as to place her in the category of an innocent bystander and exempt the transaction from the taint of a gambling obligation, and, secondly, the plaintiff, being the owner of the establishment where gambling was permitted, was precluded from maintaining an action on an obligation contracted in her establishment for the purpose of gambling, with her full knowledge and consent. We, therefore, take the liberty of adopting the opinion of the lower court as our own and will thereafter answer the arguments of counsel for plaintiff made in his brief as to any errors which he contends were made by the District Court in its written reasons, and we therefore quote the reasons for judgment:
"The plaintiff, Mary Domino, brings this suit against the defendant, Robert Labord, for a judgment on two unpaid checks totalling $1,150 that she alleges she cashed for Labord. She attaches the two checks to her petition. They are both dated at Morgan City, Louisiana, February 5, 1956, and are payable to the order of cash. They are drawn upon the Citizens National Bank of Morgan City. One is for $750; the other is in the amount of $400.
"The defendant resists the action by claiming that the checks were issued in a gambling game and given to pay a gambling debt to the knowledge of the plaintiff. He contends that the obligation they purportedly import is unenforceable because it is illegal, null and void.
"There is no doubt that the checks were issued to cover gambling losses, but the testimony describing the circumstances under which the checks were given is in conflict.
"The plaintiff, Mary Domino, owns and operates a place known as Mary's Inn on the outskirts of Morgan City. It consists of a cafe where food and intoxicating drinks are sold, and some cabins which she rents. On the night of February 5, 1956, when the checks sued upon were issued, there was a dice game going on at the bar in her cafe. She knew of the game and watched it from time to time, but she did not participate in it, nor did she receive any direct monetary benefit from it.
"These facts are about the only ones upon which the witnesses agree.
"The witnesses disagree on the number of people engaged in the game. One says there were two and the others say there were three. The three they name are the defendant, Robert Labord, a man named Wayne Clayton, and another man named Sonny. Clayton lived in one of Mary's cabins and helped around the place. Hence, he may be considered an employee at the Inn. The man named Sonny is not otherwise identified and he did not testify. Beside the testimony of Labord, Clayton, and Miss Domino, we have that of two patrons, one named Newsome and the other, Delbert M. Davis.
"The other points that the witnesses disagree on are whether the players were playing for cash or checks, and whether Miss Domino gave Labord cash for the checks she sues upon.
"It is her testimony, and that of Clayton, that the game was run on a cash basis, and that no checks were involved in it. *843 They say that Labord issued and gave Miss Domino the checks sued upon and in return she gave him cash. The other two witnesses, who were patrons in the place and who regularly eat there because they are employed in the vicinity, are not so positive but testify that it is their impression that Miss Domino cashed the checks and that only cash was involved in the game. They both say that they were not directly interested in the game hence their information is only casual.
"On the other hand, Labord, who was impressive as a witness, and who is corroborated by many of the circumstances, claims that he stopped at Mary's Inn on his way from New Orleans on the night in question and saw this dice game in progress between Clayton, who was behind the bar, and Sonny, who was in front of it. He says he got into the game to play for the drinks. That they began to play for small amounts such as 50¢ and $1.00. The stakes kept getting larger. Soon, he lost the $40 in cash he had on his person. He says he cashed a number of small checks from Miss Domino totalling $150. He received the cash from her and lost it in the game. When his losses exceeded this amount, he claims that he issued checks of small denominations and placed them in the game. When the game ended, Sonny had $750 worth of these checks and Clayton, $400. He thereupon issued one check for each of these men in these amounts and destroyed the smaller checks. The next morning he called upon Miss Domino and reimbursed her the $150 she had given him on his check. She returned the check and he destroyed it. This amount is not in controversy.
"There are several circumstances which make it doubtful that Miss Domino gave Labord $1,300 in cash as she contends. She was not well acquainted with Labord. She knew him only casually and he is not a man of outstanding financial worth. It is unlikely that a good businesswoman like Miss Domino would cash Labord's check in that amount without taking some precaution to protect herself. She operates a small place and if she had that much cash on hand, depleting it to that extent must have been a severe drain on her capital.
"Then again she seems to have let Labord take up his check for $150 without insisting that he take the $750 or the $400 check first, or all three checks. Naturally, she should have been inclined to show some resentment the next morning when Labord came to take up the smallest of three checks she claims to have held for him. But, apparently, she said nothing and let Labord refund her only $150 without protesting.
"Of course, Labord claims that $150 is all Miss Domino gave him, and a check for $150 is all he gave her. These circumstances, therefore, strongly corroborate him. Not only that, but there would have been no point in Labord paying up the $150 and leaving the other two checks unpaid if he had received cash from Miss Domino for all three checks. He would have gained no advantage as he could as easily have claimed a gambling debt on all three checks as he could have on two.
"We conclude, therefore, that Miss Domino did not give Labord cash for the checks she sues upon so as to place her in the category of an innocent bystander and exempt the transaction from the taint of a gambling obligation. Even had she given him the money for the checks, as she contends, it is very doubtful that she could recover under the circumstances.
"It is very well established in this state that courts will not render assistance to a litigant to enforce a gambling obligation. They are prohibited to do so by two sets of articles incorporated in our Revised Civil Code. The first set deals directly with gambling, and the other set deals with the consideration of contracts. These articles are:
"Article 2983, [LSA-]C.C.,
"`The law grants no action for the payment of what has been won at gaming *844 or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
"`And as to such games, the judge may reject the demand, when the sum appears to him excessive.'
"Article 1893, [LSA-]C.C.,
"`An obligation without a cause, or with a false or unlawful cause, can have no effect.'
"Article 1895, [LSA-]C.C.,
"`The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.'
"Then again our Constitution in Article 19, Section 8 [LSA] provides:
"`Gambling is a vice and the Legislature shall, pass laws to suppress it.
"`Gambling in futures on agricultural products or articles of necessity, where the intention of the parties is not to make an honest and bona fide delivery, is declared to be against public policy; and the Legislature shall pass laws to suppress it.
"`Lotteries and the sale of lottery tickets are prohibited in this State.'
"Some of the cases carrying out these legal provisions and most often cited are: Sampson v. Whitney, 27 La.Ann. 294; Britt v. Davis Bros., 118 La. 597, 43 So. 248; Martin v. Seabaugh, 128 La. 442, 54 So. 935; Bagneris v. Smoot, 159 La. 1049, 106 So. 561; Nielsen v. Planters Trust & Savings Bank of Opelousas, 183 La. 645, 164 So. 613; Keen v. Butterworth, La.App., 185 So. 37; Russo v. Russo, 5 La.App. 566; Friel v. Murchison, 8 La.App. 354; Russo v. Mula, La.App., 49 So.2d 622; Schmidt v. Barker, 17 La.Ann. 261; Whitesides v. McGrath, 15 La.Ann. 401.
"These are the legal provisions that bar actions on gambling transactions in this State, but the courts have not extended these provisions to bar recovery on an obligation contracted with a third person for the purpose of gambling even though that person knew the purpose of the transaction. This seems to be a proper distinction. If a bystander advances money to a gambler purely as a personal favor, it is not equitable to permit the gambler to plead his own turpitude to prevent the collection of a just debt. In these cases, of course, the transaction cannot be branded as a gambling obligation. It is a personal loan.
"Two cases making this distinction are: Clemons v. Succession of Johnson, 10 La.App. 230, 120 So. 664; Brand v. Evans, 7 La.App. 205.
"In this case, therefore, the plaintiff, being the owner of the establishment where gambling was permitted, is precluded from maintaining an action on an obligation contracted in her establishment for the purpose of gambling, with her full knowledge and consent.
"Let there be judgment in favor of the defendant and against the plaintiff dismissing plaintiff's claim at her costs."
Counsel for plaintiff in the main contends in his brief that the Lower Court erred in his interpretation of the facts and that the plaintiff cashed the two checks which she is suing on in this suit for the defendant and that he then lost the money in the gambling game in her establishment. The District Judge, and his reasons speak for themselves, found that the checks were not cashed as contended by the plaintiff but that the checks sued upon were the result of a number of checks which were written for his losses while actually participating in the dice game and at the end of this game the defendant wrote a check to one of his adversaries for $750 and to the other for the sum of $400, being the total of his losses to each at the end of the game. Thus under the facts found by the District Court and with which we agree, *845 the checks sued upon herein were not cashed nor given to plaintiff by the defendant but were given directly to participants in the gambling game for the gambling debt due by the defendant. These facts are fatal to plaintiff's suit, however, we also agree with the holding of the District Court that under the particular facts of this case had the plaintiff given the defendant money for the checks as she contends she could not recover.
Counsel for plaintiff cites as being favorable to his cause the case of Brand v. Evans, 7 La.App. 205. However, on page 206 the Court stated: "That the premises did not belong to plaintiff and were not under his control; that plaintiff at the request of the defendant, who wished to pay his losses to Presley, loaned him this amount of money in cash, and that the defendant made out the check in suit, in favor of plaintiff in order to reimburse him the amount thus loaned * * *".
In the present case the plaintiff owned the establishment and one of the participants in the dice game with the defendant was a helper or employee of the plaintiff and, therefore, plaintiff permitted the gambling in her establishment. The gambling game was conducted in full view of the plaintiff with her knowledge and consent.
Counsel for plaintiff further relies upon the case of Clemons v. Succession of Johnson, 10 La.App. 230, 120 So. 664, 665, in which the court stated:
"The fact that plaintiff loaned deceased money with which to pay a gambling debt, with which plaintiff was in no way connected, does not render a note given for the money loaned void for the want of consideration. The consideration for the note sued on was money loaned, and the note is valid."
As previously stated, it cannot be said that plaintiff was in no way connected with the game which she permitted one of her employees to participate in and which was operated in full view and with her knowledge and consent, for the game was conducted in her establishment which was under her control.
Being in full accord with the reasons given by the District Court as above quoted, the judgment is affirmed, at the cost of plaintiff-appellant.