HOOD, Judge.
This is an action for a money judgment instituted by W. T. West against Loe Pipe Yard, a commercial partnership composed of Bert Loe and Glen D. Loe, and against the two partners individually. Plaintiff alleges that he cashed drafts issued by defendant, Bert Loe, aggregating the sum of $5,000, and that the amount due on those drafts has never been paid. As evidence of this indebtedness he alleges that he is the holder and owner of nine drafts drawn on the account of Loe Pipe Yard in the Olla State Bank, Olla, Louisiana, by defendant, Bert Loe, a member of the partnership.
Defendants admit the execution of the drafts, but they deny that they are liable to plaintiff for the amounts represented by them. They allege that the drafts were issued to obtain money or chips to be used by Bert Loe for gambling purposes, and that plaintiff is not entitled to recover because the transaction was one which is contra bonos mores.
The trial judge originally rendered judgment in favor of plaintiff, but upon application of defendant a new trial was granted. After the second hearing, judgment was rendered by the trial court in favor of defendant rejecting plaintiff’s demands and dismissing the suit at his costs. Plaintiff has appealed from that judgment.
One of the drafts on which plaintiff bases his claim is for the sum of $1,000 and is dated September 3, 1954. The eight remaining drafts are for the sum of $500 each, and each such draft is dated September 4, 1954. All of the drafts are made payable to “Cash,” are signed by “Loe Pipe Yard, by Bert Loe,” are drawn on the Olla State Bank, and bear the endorsement of W. T. West.
At the time these drafts were issued, plaintiff West was the assistant manager of the Famous Corner, a gambling establishment located in Natchez, Mississippi-Some of the owners of this Mississippi', gambling house also owned a substantial'! interest in the Plaza Club, in Concordia. Parish, Louisiana, which club had been' leased to one Ed Jones, and in September, 1954, it was being operated by him as a. bar, restaurant and night club. On the • second floor of the Plaza Club was a. room, equipped with a table and chairs,. which was used by customers to engage ■ in gambling games of their own choice. Jones, the operator of the club, testified', that the “house” had no interest in the-gambling activities which were conducted: in the upstairs room, and that all such' activities were spontaneously engaged ini by customers without supervision or regulation by employees of the Plaza Club. The purpose of maintaining the room, he stated, was to attract customers and thus stimulate the sale of food and drinks.
Late in the afternoon on Sunday, September 4, 1954, which was the day preceding Labor Day, plaintiff and Ike Cowan' happened to be in plaintiff’s automobile-near a motel in Concordia Parish when» they saw defendant Loe leaving the motel., Plaintiff engaged Loe in conversation and' invited him to accompany plaintiff to the-Plaza Club for a drink. Loe got into» plaintiff’s automobile and accompanied him to the Plaza Club, and after they arrived: Loe began drinking.
Shortly after Loe arrived at the Plaza Club, someone mentioned that a poker game either was in progress or was about to begin in the upstairs room. Loe then gave a barmaid $10 with instructions that ■ she try to win something in the poker game, and a short time later Loe went upstairs and began to participate in the poker game himself.
Loe apparently had little or no money with him, so he obtained a substantial sum from plaintiff in order to enable him to participate in the game. During the *471 course of the game Loe borrowed additional amounts from plaintiff until he had •obtained the total sum of $2,000 from him. Drafts were issued by Loe and handed to plaintiff for amounts aggregating $2,000. Plaintiff testified that he had only $1,700 in cash on his person at that time, all •of which was handed to Loe in exchange for the drafts, but that he borrowed $300 from one Hal Kaizer and also handed that •to defendant. After obtaining $2,000 from plaintiff, Loe then obtained $2,500 from ■Clifton Vetch, a participant in the poker .game, and $500 from an unknown salesman ■who also was participating in the game. Drafts were issued by Loe each time these .additional funds were obtained, and plaintiff endorsed the drafts which were given to Vetch and the salesman, guaranteeing the payment of such drafts. Plaintiff •contends that he later paid Vetch and the salesman the amounts which they had advanced to defendant, and that he is en-titled to recover judgment for these amounts as well as for the sum which •plaintiff advanced directly.
Shortly after plaintiff and defendant arrived at the Plaza Club, the owner of that establishment turned over his keys and the •complete management of the club to plaintiff West, authorizing him to sell drinks to •customers and to close the business up at any time he saw fit. Plaintiff then tended the bar and remained in complete charge ■of the Plaza Club from the time Jones left, which was late Sunday afternoon, until the gambling game broke up sometime . after daylight the following morning.
Defendant contends that plaintiff was one •of the promoters of the gambling game in which defendant was engaged, that the • drafts were given for the purpose of enabling Loe to engage in illegal gambling activities, that plaintiff had full knowledge of the purpose for which the checks were .given, and accordingly that plaintiff is not able to enforce obligations evidenced by -those checks.
The Louisiana Constitution of 1921, Ar-•ticle XIX, Section 8, LSA, provides:
“Gambling is a vice and the Legislature shall pass laws to supress it.”
The Louisiana Civil Code of 1870, LSA, provides:
“Art. 1893 — An obligation without a cause, or with a false or unlawful cause, can have no effect.”
“Art. 1895 — The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.”
“Art. 2983 — The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
“And as to such games, the judge may reject the demand, when the sum appears to him excessive.”
The above quoted provisions of the constitution and statutes of the State have received frequent interpretation by the courts of Louisiana. It is now well settled that one who lends money to another to pay a gambling debt incurred in a transaction with which the lender was wholly unconnected may be classified as an innocent bystander to the illegal activity, and he, therefore, may maintain an action to recover the amount which he has lent. Brand v. Evans, 1927, 7 La.App. 205; Celmons v. Succession of Johnson, 1929, 10 La.App. 230, 120 So. 664; Wilson v. Sawyer, La.App.1958, 106 So.2d 831. However, one who owns or operates a gambling establishment and who lends money for the purpose of paying a gambling debt incurred in such establishment cannot recover the money lent, because he was not wholly unconnected with the illegal activity. Sampson v. Whitney, 1875, 27 La.Ann. 294; Bagneris v. Smoot, 1925, 159 La. 1049, 106 So. 561; Russo v. Russo, 1927, 5 La.App. 566; Keen v. Butterworth, La.App.1938, 185 So. 37; Russo v. Mula, La.App.1950, 49 So.2d *472 622; Domino v. La Bord, La.App.1957, 99 So.2d 841.
In this case we have no difficulty at arriving at the conclusion that the Plaza Club was a gambling establishment, and that the owner or operator and those who promoted and participated in the gambling activities in that club were participating in an illegal activity prohibited by the above quoted provisions of the constitution and statutes of this State. Plaintiff, however, was not the owner of that establishment and he did not participate in the poker game in the sense that he did not sit at the table, have cards dealt to him, make bets, etc. An important question presented in this case, therefore, is whether plaintiff was wholly unconnected with the illegal activities in which Loe was engaged, and accordingly, whether he can be classified as an innocent bystander under the circumstances presented here.
The trial judge concluded that although plaintiff was not the owner of the gambling establishment, he was in charge of it and his conduct was such that he could not be classified as an innocent bystander. In his written reasons for judgment, the trial judge said:
“I therefore am of the opinion that though Mr. West neither ran the game nor was the owner of the building, that yet his conduct was such that he cannot be held to be that of an innocent bystander. It was he that loaned the defendant the money to engage in the game. He knew exactly what the defendant was to do with the money. He further assisted in the continuance of the poker game by arranging to furnish or supply money. Though he was not the owner of the building he certainly was in charge of it by taking his own testimony the building was kept open throughout the evening and on each instance when the defendant needed money with which to play he either furnished it or arranged it by endorsing checks. That the plaintiff did aid in the gambling game of poker by furnishing funds for the game.”
In our opinion, the evidence amply supports the conclusion reached by the trial court. Plaintiff invited and brought the defendant to the Plaza Club, "advanced him a substantial sum of money for the purpose of engaging in the poker game, and guaranteed the repayment of additional amounts borrowed by Loe from other participants in the game. Also, plaintiff accommodated those engaged in the poker game by tending the bar and managing the Plaza Club from late Sunday afternoon until after daylight Monday morning. The loans were made and guaranteed by plaintiff with the understanding that it would be necessary for him to go to the trouble and expense of driving to Olla, a distance of 75 miles, the following Tuesday in order to get the drafts cashed. According to plaintiff’s testimony, he had seen Loe on not more than two occasions prior to this and they were only casual acquaintances. We could understand plaintiff’s actions in accommodating Loe to the extent shown here if plaintiff had an interest in or some connection with the poker game, but we cannot conceive of plaintiff loaning such large sums of money to a casual acquaintance, guaranteeing the payment of additional sums and otherwise accommodating defendant as he did if plaintiff, in fact, was wholly unconnected with the gambling activities which were being conducted in the Plaza Club on that occasion.
There are other facts which we think have some significance in determining whether plaintiff was or was not an innocent bystander. Plaintiff’s employers owned a substantial interest in the Plaza Club, and the testimony of Dalton Gentry and Ed Jones indicated that West occasionally worked in and tended the bar in that club. Also, a number of the participants in the poker game apparently were intimate friends of plaintiff. During the early part of the game, for instance, Cowan, who was with plaintiff when Loe was. *473 invited and taken to the Plaza Club, was “at the chip rack,” which we presume means that he was serving as banker for the game. Later Cowan was replaced at the chip rack by Wickson, who was intimate enough with plaintiff to accompany him to Thibo-deaux the following Tuesday just for the ride. Clifton Vetch, who not only participated in the poker game but loaned defendant $2,500 to be used in that game, was an intimate friend of plaintiff, having hunted with him frequently. Plaintiff testified that he did not know the name of the salesman who participated in the game, yet he stated that he had been cashing checks for this salesman for the last four or five years, and that one or two days after these drafts were issued he made an appointment with and met this salesman in Natchez and obtained the draft from him to take to Olla to have cashed, and that some time thereafter he paid this salesman the $500 which the salesman had loaned to Loe. We find it difficult to believe that plaintiff is unable to identify this salesman. All of these circumstances indicate to us that plaintiff had some interest in the gambling activities which took place in the Plaza Club on that occasion.
In this case we conclude, as did the trial judge, that although plaintiff did not own the Plaza Club he was operating it temporarily and was in complete control of it while the poker game was being conducted there, that plaintiff was not wholly unconnected with that illegal activity, that he was not an innocent bystander, and that the trial judge correctly rejected his demands.
Plaintiff contends that the order for a new trial was improperly granted by the trial court, and accordingly that the final judgment rendered by that court should be set aside and the original judgment in favor of plaintiff reinstated. The record shows that on April 7, 1955, three days after the original judgment of the trial court was rendered, counsel for defendant filed a motion for a new trial and/or a rehearing. Attached to this pleading was the customary certificate of service on counsel for plaintiff through the U.S. mail. Counsel for plaintiff admits that he received a copy of this pleading on April 8 or 9. The order granting a new trial was signed in open court on April 13, 1955, but the new trial apparently was granted prior to fixing the motion for argument. On April 18, counsel for plaintiff filed a motion to vacate the order granting the new trial, and on May 16 he filed an amendment to that motion. Counsel for plaintiff contends that the order should be vacated because of a failure to comply with the provisions of Article 559 of the Code of Practice. That article provides:
“Art. 559. The party demanding a new trial must set forth the grounds on which he rests his demand, and the same must be filed, entered on the records of the court, and notified to the adverse party, in order that he may answer within the delay prescribed for answering.”
Plaintiff contends that he was prejudiced by the trial court’s action in issuing an ex parte order granting a new trial. It is apparent, however, that plaintiff was given adequate opportunity to oppose the scheduling of a new trial before the second hearing was held. The minutes of September 19, 1955, in fact, recite that:
“In this case the motion to vacate an order for new trial was taken up, argument heard and submitted to the Court. The motion was overruled by the Court and case ordered returned to calendar for refixing. Counsel for plaintiff gives notice to court to Defendant and opposing counsel, present in Open Court and taking cognizance of this notice that he intended to forthwith apply to the Honorable Supreme Court of the State of Louisiana for writs Certiorari, Prohibition, Mandamus for review of ruling today entered herein and ruling heretofore entered granting new trial.” ■
*474 In our opinion, plaintiff was not prejudiced by the trial court’s action in granting an ex parte order for a new trial, in view of the fact that he later was afforded ample opportunity to oppose that order. Since we are convinced that the original judgment of the trial court was contrary to the law and the evidence, we think that the trial judge correctly set that judgment aside, granted a new trial and rendered judgment for defendant.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.