MINOS D. MILLER, Jr., Judge pro tem.
Eugene J. Lillis has appealed from a judgment rejecting his demand in a suit on a promissory note. Suit was originally filed by Lillis against Horace R. Perez and Ed Prendergast, Sr., as makers, and the Succession of Bert W. Clarke, as representative of said Bert W. Clarke, deceased, as endorser of the note. The note sued on was for the principal sum of $22,000.00 dated April 8, 1955, payable 6-months after date, bearing interest at the rate of 8% per *456 annum and providing for attorney’s fees in the amount of 10% of the principal and interest due and owing if not paid when due. The principal amount of said note had been reduced by $3,500.00 at the time suit was filed, and Lillis’ demand was for $18,500.00 plus interest and attorney’s fees.
Defendants-Appellees do not deny the execution and endorsement of the note but set up the special defense of illegal cause or consideration and alleged that the money advanced by Lillis in exchange for the note was for the purpose of providing a bankroll for a gambling venture in which Lillis was to participate in the profits to be made therefrom.
Horace R. Perez died subsequent to the filing of the suit but prior to the trial, and Lillis dismissed his suit as to him, but reserved his rights as to the other two defendants.
In his written reasons for judgment, the learned trial judge found the facts to be as follows:
“Horace R. Perez, Ed. Prendergast, Sr., and Bert W. Clarke, together with several other persons whose names and identities were not made known in the trial of this case, entered into a joint venture to operate a gambling establishment in the State of Mississippi in East Pearl River.
“The gambling house, referred to as ‘The Pines’, opened for business on or about January 1, 1955.
“There is some testimony to the effect that plaintiff, Lillis, had an interest in the gambling establishment from its inception but this is denied by the plaintiff. There is no doubt, however, that the plaintiff knew that The Pines was a gambling establishment and that plaintiff knew that the defendants, Perez, Prendergast and Clarke, were the principal owners of said gambling establishment. The evidence further shows that the gambling establishment, because of political pressure, was closed down in about early March, 1955. In early April, 1955, the operators of said gambling establishment were advised that it would be safe to reopen. The evidence further shows that Lillis, the plaintiff herein, prior to the closing of said gambling establishment, had complained to Bert W. Clarke that the said establishment should be making more money and he advised the said Clarke to put a man in there to check the place.
“When the operators were advised that the place could be reopened, it was decided by the operators that they needed a larger bankroll to operate the dice tables; that the dice tables were the most profitable part of the gambling establishment, and they had heretofore been leased. In order to obtain sufficient funds to operate the dice tables Clarke prevailed upon Lillis to advance to the gambling venture, represented by Perez, Prendergast and Clarke, the sum of $20,000.00 ($22,000.00). On April 8, 1955, Lillis, Clarke, Prender-gast and Perez met in Clarke’s office and Lillis gave to Clarké a check payable to Prendergast, Perez, and Clarke, dated April 8, 1955, for $22,000.00 (P-4). In exchange for said check Lillis demanded and received the note which is the subject of this suit (identified as P-1) in the sum of $22,000.00, which is signed by Perez and Prendergast, as makers, and endorsed by Bert W. Clarke. In addition to the note, Lillis exacted from Clarke a promise to participate in the profits which would accrue to Clarke from the gambling transaction. This was admitted by both Lillis, plaintiff, and Lillis, Jr., plaintiff’s son, although they referred to their participation in the profits as a bonus.
“Immediately upon receipt of said check and said note, Clarke took $10,-000.00 from his safe in his office and gave it to Prendergast and Perez for *457 the purpose of taking said money to The Pines to be placed in the bankroll of The Pines for the purpose of operating the gambling venture therein.
“On the same day, April 8, 1955, Clarke, from the proceeds of said check, took $10,000.00 in cash and by appointment, he, together with Mrs. Clarke, drove over to pick up at North Shore at the Lillis camp Mr. and Mrs. Lillis and the four proceeded to the gambling house known as The Pines in East Pearl River, Mississippi. During the course of the ride to The Pines, Mrs. Clarke heard Mr. Lillis complaining that they (Clarke and Lillis) were not in The Pines often enough and that the other operators could be stealing from them. Immediately upon the arrival of the four at The Pines, Clarke took the $10,000.00 and placed it in the cashier’s cage as part of the bankroll of the gambling venture.
“The Court further finds as a fact that subsequent to the transaction hereinabove set out that Lillis, plaintiff herein, bought out another share in the gambling venture for the sum of $6,000.00. In that transaction by Lillis, check was made payable to The Pines directly and plaintiff contends that because that check was made payable to The Pines, that was the first investment that Lillis made in the venture. However, the evidence shows that at the time Lillis gave the check for $6,-000.00 payable to The Pines, to Pren-dergast and one Fred Schwartz that the plaintiff inquired at the time, ‘what are my percentages now? ’. Plaintiff failed to take the stand after this testimony to deny that this statement had been made by plaintiff and the court must conclude that at the time Lillis gave his check for $6,000.00 payable to The Pines that he already owned some percentage of the gambling venture.”
From these findings the trial court concluded that the $22,000.00 advanced by plaintiff was for the promotion of an unlawful venture and the note sued upon, being in effect a contract based upon an unlawful cause is unenforceable. In so holding the court reasoned as follows:
“The Court will not undertake to cite all of the jurisprudence on the subject.
“Article 1893 of our Civil Code provides as follows:
“ ‘An obligation without a cause or with a false or unlawful cause can have no effect.’
“Article 1895 provides:
“ ‘The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.’
“The Constitution of the State of Louisiana provided in Article 19, Section 8, as follows:
“ ‘Gambling is a vice and the legislature shall pass laws to supress it/
“The Legislature of the State of Louisiana, R.S. 14:90, declares gambling to be a crime and R.S. 13:4721 defines gambling houses as nuisances.
“The jurisprudence of this State is replete with decisions holding that the courts will not lend its assistance to the enforcement of gambling transactions. See the following cases: Britt v. Davis Bros., 118 La. 597, 43 So. 248; Martin v. Seabaugh, 128 La. 442, 54 So. 935; Bagneris v. Smoot, 159 La. 1049, 106 So. 561; Keen v. Butterworth [La.App.], 185 So. 37, Neilson [Nielson] v. Planters Trust and Savings Bank, 183 La. 645, 164 So. 613; Russo v. Russo, 5 La.App. 566; Freil [Friel] v. Murchison, 8 La.App. 354; Russo v. Mula [La.App.], 49 So.2d 622; Domino v. LaBord [La.App.], 99 So.2d 841; *458 West v. Loe Pipe Yard [La.App.], 125 So.2d 469.
“The Court having found that the note sued upon was given for the promotion of an illegal venture, the Court will not lend itself to the enforcement of said illegal contract and the court will accordingly dismiss plaintiff’s suit.”
Plaintiff-Appellant readily admits the general rule is to the effect that the courts of this State will not enforce an illegal transaction, however, he contends that the prohibitions contained in the aforequoted provisions of the Louisiana Constitution and Revised Civil Code do not control this case because plaintiff was not a participant in the gambling venture. Plaintiff argues that although he knew the money would be used to bankroll a gambling venture, the real consideration for the loan was the relationship of personal friendship existing between plaintiff and Bert W. Clarke. As such, plaintiff reasons, he is an innocent bystander under the doctrine followed in Clemons v. Succession of Johnson, 10 La.App. 230, 120 So. 664 and Brand v. Evans, 7 La.App. 205, and consequently the cause for the contract is not unlawful.
We can find no merit in plaintiff’s contention. Certainly if the plaintiff had been moved to loan this money solely because he expected to receive therefor the repayment of principal plus interest, his argument would be forceful. However, when he exacted the promise of a bonus payable from the profits of the gambling operations, he conditioned the full repayment of the loan to the success of the gambling operations and to that extent he became a participant in the gambling venture. We, therefore, agree with the trial court that one of the prime causes which moved plaintiff to enter into this transaction was the expectation of profits to be derived by him from the gambling operations.
On May 26, 1956 and August 22, 1956, respectively, Bert W. Clarke, who was a practicing attorney having represented plaintiff-appellant on several occasions, wrote two letters to plaintiff-appellant in which he acknowledged this indebtedness. In the May 26, 1956 letter Clarke also made the following observation: “ * * * not only am I legally liable as endorser, but I am morally bound because I know that the loan was only made by you based upon my endorsement.”
Able counsel for plaintiff-appellant argues that the above quoted portion of Clarke’s letter prove this note to be a valid obligation; that since Clarke was a practicing attorney and presumably aware of the prohibition against the legal effects of gambling contracts and .fully cognizant of all the facts surrounding this transaction, his admission of legal liability as endorser of this note must indicate that Clarke knew that the loan was not for the purpose of participating in a gambling venture. Counsel reasons that Clarke’s conclusion as to the validity of this note should be accepted. We think not. The determination of this case must depend on facts presented at the trial. While Clarke’s opinion concerning the legality of the note would have probative value in assisting the court to decide which line of conflicting evidence should be accepted as correct, it could not of itself prove facts not in the record, nor disprove facts which are in the record and not contradicted. Since the evidence convinces us as it did the trial judge that the note sued on was in furtherance of a gambling venture in which venture plaintiff-appellant was a participant to the extent that he was to receive a bonus from the profits of the gambling venture, we cannot go beyond the evidence and accept Clarke’s conclusion in this matter.
For these reasons the judgment of the lower court is affirmed, plaintiff-appellant to pay all costs of this appeal.
Judgment affirmed.