49 So.2d 622 (1950)
RUSSO
v.
MULA.
No. 3313.
Court of Appeal of Louisiana, First Circuit.
December 22, 1950.
Blanchard & Blanchard, Donaldsonville, for appellant.
J. Y. Gilmore, Morgan City, for appellee.
DORÉ, Judge.
This is an action instituted by the plaintiff against the defendant wherein he seeks judgment for the sum of $800.00, with legal interest from judicial demand until paid and costs.
He alleges that he is the holder and owner, in due course and for a valuable consideration, of a certain check made, executed, subscribed and delivered (to him), by the defendant, in the sum of $800.00, being dated May 8, 1947.
Defendant, for answer, admits the execution of the check, but denies that it was issued for a valuable consideration. He avers that the check was issued in payment of his gambling losses in a card game at plaintiff's establishment located at Morgan *623 City and which card game was conducted and operated by plaintiff and is therefore void for want of consideration.
Upon these issues, the case was tried, resulting in a judgment, for lengthy written reasons assigned, in favor of defendant, dismissing plaintiff's suit. Plaintiff has appealed.
In his reasons for judgment the trial judge states:
"The defendant, Mula, was one of plaintiff's regular patrons. He frequently gambled there and issued checks for which he sometimes received chips and sometimes cash. On or about May 8, 1947 he participated in games known as `Red Dog' and `Georgia Skin Game'. These games are played with cards and chips are used as representatives of money. The plaintiff furnishes the chips, the cards and the other paraphernalia necessary for the games. He, or his employee, conducts and generally participates, in the games. On the date in question, the games lasted practically all night.
"Mula testified that he lost $1045.00 that night; $245.00 in cash and $800.00 represented by the check herein sued upon. He states, and in this he is corroborated by the witness, John Zillemuer, that when he ran out of cash he issued three checks in denominations of $100.00, $200.00, and $500.00 for which he was given chips by the operator of the game.
"On the other hand, plaintiff contends that these three checks were cashed at the office of the Shell Inn and that Mula was given currency therefor. In this contention plaintiff is supported by the testimony of Dr. Frank Russo who testified that the $100.00 and $200.00 checks were cashed by him at the office and by Nick Russo who testified that he likewise cashed the $500.00 check.
"The next morning the check sued upon was given in lieu of the three checks issued the night before. The plaintiff maintains that the defendant himself handled this transaction and the defendant claims that it was done by his brother. It is not important who handled the transaction.
"In spite of this conflict in the testimony on these points, it cannot be denied that Mula lost heavily in these games, and that the check sued upon was issued to cover the greater portion of these losses.
"Plaintiff, however, hopes to succeed in this action on account of the fact that he maintains Mula received the face value of the check sued upon in currency, and that was a transaction entirely separate and distinct from the gambling.
"Plaintiff does not point out the particular legal authority he relies on for judgment. The defendant furnished no legal citation either.
"Our Civil Code provides that no action shall lie for the payment of what has been won at gambling.
"Article 2983 states:
"Article 2983: `The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
"`And as to such games, the judge may reject the demand, when the sum appears to him excessive.'"
"Our jurisprudence is uniform to the effect that courts will not entertain actions to recover what has either been won or lost at gambling.
"In the case of Sampson v. Whitney, 27 La.Ann. 294, the plaintiff sued to collect a sum of money he alleged was due him by the defendant. The defendant pleaded that the amount sued for was his gambling losses in a game played at a house kept by plaintiff for the purpose of gambling. The facts show that defendant's contention was correct. After the game had ended plaintiff paid to the several other persons engaging in the game what defendant had lost to them. It is for reimbursement of this amount that the suit was brought.
"The Court denied plaintiff's claim because plaintiff had indirectly contributed to the losses by providing the means with which the game was conducted and the *624 building in which it was held. The Court stated that under these facts the defendant was not more bound legally or morally to pay the plaintiff than he was to pay the parties who won from him in the prohibited game.
"Likewise, in Keen v. Butterworth, La. App., 185 So. 37, the Court refused to entertain plaintiff's demand on the promissory note that he had received in a gambling transaction, although it was not shown that plaintiff and defendant had been engaged in the same gambling games, or had gambled against each other.
"To the same effect is Russo v. Russo, 5 La.App. 566, Bagneris v. Smoot, 159 La. 1049, 106 So. 561, and Nielsen v. Planters Trust & Savings Bank of Opelousas, 183 La. 645, 164 So. 613.
"Under these authorities, therefore, one who conducts a gambling establishment and furnishes money or credit to one engaged in gambling in such establishment has no action to recover on what he had furnished or loaned.
"Even though we would find with plaintiff on the facts, that he furnished Mula with currency in return for Mula's checks, we could not give him judgment because the game in which Mula was engaged was conducted and promoted by plaintiff, and the money he advanced to Mula was advanced for the purpose of covering the losses Mula suffered in the game. It is inconceivable that the persons who cashed Mula's checks and advanced him this money were ignorant of the purpose for which Mula needed this money.
"Of course, it is likewise clear that if Mula was given chips for his checks, as he maintains, plaintiff could fare no better.
"Our Courts make a distinction in the case where a bystander, or one not connected with the gambling, makes a loan or cashes a check for one who is gambling. That distinction was made in the case of Clemons v. Succession of Johnson, 10 La. App. 230, 120 So. 664, and in Brand v. Evans, 7 La.App. 205.
"The plaintiffs were permitted to recover in those two cases, even though it was shown that their claims were for money advanced to cover gambling losses, because in each case the person making the advances was not connected with the gambling operations.
"It is quite proper that this distinction should be made. This is so because if we were to shield the defendant we would be permitting him to plead his own vice to prevent an innocent person from obtaining what is justly due him.
"There is another line of authority to prevent plaintiff's recovery. These authorities are based on the ground that Courts will not lend aid to enforce contracts, or transactions, that are contrary to good morals or public policy.
"Our codal provisions along these lines are Articles 1893 and 1895 of our Revised Civil Code. They are as follows:
"Article 1893: `An obligation without a cause, or with a false or unlawful cause, can have no effect.'
"Article 1895: `Unlawful causes defined. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order.'
"The Louisiana Code of Practice Article 19 States:
"Article 19. `Illegal obligationsEnforceability. Obligations contrary to justice, good faith, or good morals, such as those by which a reward is promised to another to commit a crime, give no right of action to either party to enforce the execution of the contract.
"`But if the reward promised has been paid, no action can be brought to obtain the payment of the amount.'
"The Constitution of Louisiana declares that `Gambling is a vice and the Legislature shall pass laws to suppress it.' Article 19, Section 8.
"One of the cases carrying out this doctrine is Schmidt v. Barker, 17 La.Ann. 261. There our Supreme Court said:
"`This court has often held that it will not lend its aid to settle disputes relative to contracts reprobated by law. It will notice their illegality EX OFFICIO, and allow it without any plea at any stage of the *625 proceedings. Parties cannot be heard who ask relief from a violation of law. The law leaves them where their conduct has placed them. * * *'
"In Whitesides v. McGrath, 15 La.Ann. 401, the Court stated:
"`The association was not only against good morals, but highly criminal. Revised Statutes, p. 151, sec. 96. Courts of Justice are not opened to litigations of this kind.'
"See also Britt v. Davis Bros., 118 La. 597, 598, 43 So. 248, and Martin v. Seabaugh, 128 La. 442, 54 So. 935."
This case presents a question of fact, that is whether the check was issued to pay the gambling losses of defendant, to the knowledge of plaintiff, and unless we can find a manifest error in the trial court's finding, his judgment should be affirmed. We have carefully read and considered the record in this case and have checked the authorities cited by the trial judge. We do not find any manifest error in his finding of fact. To the contrary, we fully agree with his finding of fact and the law applicable to these facts.
In his brief, plaintiff contends that the defendant had not borne the burden of proof of his special defense. If the burden was on him to show lack of consideration, it is our opinion that he has fully borne such burden. He has proven to our satisfaction that plaintiff was the owner and operator of the Shell Inn, wherein gambling games were conducted, with plaintiff's knowledge and consent; that on the night of May 8, 1947, there was being conducted a gambling game of which plaintiff was a participant and operator; that the game was played with "chips", of several denominations, representing money; that defendant obtained these chips from plaintiff, and issued his checks for them. We are not impressed with the testimony of plaintiff's brothers to the effect that defendant would cash these checks at the office of plaintiff. Suffice it to say that the trial judge believed the testimony of defendant rather than the testimony of plaintiff and his brothers. It is not the number of witnesses which balance the scale of justice. It is the evaluation of the testimony of the witnesses which count. Under the decision of the case of Sampson v. Whitney, cited by the trial judge, the case was correctly decided.
For these reasons assigned the judgment appealed from is affirmed.