734 So.2d 947 (1999)
TeleRECOVERY OF LOUISIANA, INC.
v.
Craig A. MAJOR.
Nos. 98 CA 1191, 98 CA 1192.
Court of Appeal of Louisiana, First Circuit.
May 18, 1999.
Rehearing Denied June 29, 1999.
*948 Brian E. Seven, Stanley C. Kottemann, Jr., Metairie, Counsel for Plaintiff/Appellant TeleRecovery of Louisiana, Inc.
Kathryn Wyble, Baton Rouge, Counsel for Defendant/Appellee Craig A. Major.
Before: FOIL, KUHN, and WEIMER, JJ.
KUHN, J.
This is an appeal from the granting of defendant's motion for a summary judgment dismissing this consolidated action. For the following reasons, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY
Plaintiff/appellant, TeleRecovery of Louisiana, Inc. ("TeleRecovery"), filed two lawsuits, as assignee for collection, to recover amounts due on six documents signed by the defendant/appellee, Craig A. Major. The first action, entitled "Petition on NSF Check," was filed by TeleRecovery on August 27, 1996, in the 19th Judicial District Court to recover from defendant $30,000.00, represented by three instruments payable to the Belle of Baton Rouge. Plaintiff alleged in its petition that defendant issued three checks, two on December 26, 1995 and one on December 26, 1996,[1] each in the amount of $10,000.00, drawn on Guaranty Bank and Trust, and personally signed by defendant. Plaintiff further alleged that payment of the checks was refused by the drawee bank, which returned the instruments marked NSF, and that despite amicable demand defendant has failed to pay the amounts due. Copies of the three instruments were attached to the petition.
The second lawsuit, also entitled "Petition on NSF Check," was filed on September 24, 1996, in the 12th Judicial District Court to recover from the defendant $35,000.00, represented by three instruments made payable to the Grand Casino of Avoyelles. Plaintiff alleged that defendant issued three checks on December 28, 1995, in the amount of $5,000.00, $15,000.00 and $15,000.00, also drawn on Guaranty Bank and Trust, and personally signed by the defendant. Plaintiff further alleged that payment of the checks was refused by the drawee bank, which returned the instruments marked NSF, and that despite amicable demand, defendant has failed to pay the amounts due.
In both lawsuits TeleRecovery prays for twice the amount of the checks, penalties for writing NSF checks, attorney's fees, interest and costs. Defendant objected to each lawsuit by filing a dilatory exception of improper venue. The exceptions were granted and both lawsuits were transferred to the 18th Judicial District Court.
*949 On June 26, 1997, defendant answered each lawsuit generally denying the allegations and further answering urged (1) that plaintiff had no cause of action to collect the gambling debts; (2) that the obligations are null; and (3) that the documents attached to the petition did not constitute "checks." The two cases were consolidated on June 26, 1997.
Defendant then moved for summary judgment in the consolidated cases alleging that plaintiff's demands were legally unenforceable. Defendant maintained that the markers he executed were uncollectable gambling debts under La. C.C. arts. 2983 and 2984. In support of his motion, defendant filed and signed an affidavit which states:
1. I am the defendant in the above captioned action.
2. On December 28, 1995, I obtained the sum of Thirty-Five Thousand and No/100 ($35,000) Dollars in the form of chips from Grand Casino Avoyelles, which was solely used in gambling, and all such funds were lost to Grand Casino Avoyelles on that day.
3. On December 26, 1995, I obtained the sum of Thirty Thousand and No/100 ($30,000) Dollars in the form of chips from the Belle of Baton Rouge, which was solely used in gambling, and all such funds were lost to Belle of Baton Rouge on that day.
On September 8, 1997, without issuing reasons, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's claims. Plaintiff appeals.

LAW AND ANALYSIS

Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended La. C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA, Inc., 29,835, pp. 4-5 (La.App.2d Cir.9/24/97), 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La.App. 3d Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
In 1997, by Act No. 483, the legislature again amended La. C.C.P. art. 966 to incorporate the federal summary judgment analysis. Hayes, 96-287, p. 7, 685 So.2d at 694. Under the amended version of La. C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Berzas, 29,835 at pp. 7-8, 699 So.2d at 1153-1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether it is appropriate. Sanders, 96-1751 at p. 7, 696 So.2d at 1035.

*950 Civil Code articles 2983 and 2984
Louisiana Civil Code article 2983 provides as follows:
The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
And as to such games, the judge may reject the demand, when the sum appears to him excessive.
Louisiana Civil Code article 2984 provides as follows:
In all cases in which the law refuses an action to the winner, it also refuses to suffer the loser to reclaim what he has voluntarily paid, unless there has been, on the part of the winner, fraud, deceit, or swindling.

Analysis
In the present case, the initial burden of proving entitlement to summary judgment was with defendant. In support of his motion, defendant attached his affidavit which in essence was prepared to prove that the debts are unenforceable for want of lawful consideration. Although the record contains no written reasons for judgment, the trial court must have agreed with the defendant that, as a matter of law, La. C.C. arts. 2983 and 2984 prohibit TeleRecovery's action. Defendant asserts that the trial court was correct to dismiss plaintiff's claims as the language of the articles is clear and unambiguous. Thus, defendant maintains articles 2983 and 2984 apply to gaming, including the casinos wherein he became indebted, and as such, prohibit the collection of gaming debts.
In its appeal, plaintiff avers that the trial court incorrectly applied the law because La. C.C. arts. 2983 and 2984 apply only to unauthorized forms of gambling. Thus, according to the plaintiff, the trial court erred in granting summary judgment when the debts sued upon were incurred by the defendant during the course of legal and licensed casino gaming operations in Louisiana.[2] Because we find that defendant did not incur a gaming debt, we pretermit any discussion of whether Civil Code articles 2983 and 2984 apply.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. An obligation cannot exist without a lawful cause. La. C.C. art. 1966. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or which is against public policy. La. C.C. art. 1968.
The law presumes that persons in their business transactions do not intend to violate the law or to make contracts for the enforcement of which the law refuses a remedy, and thus, when one party charges that the contract is illegal, the burden of proof is imposed upon him to establish the contention. A Better Place, Inc. v. Giani Inv. Co., 445 So.2d 728, 732 (La.1984). The agreement of the contracting parties will not be decreed illegal where a reasonable construction supports its validity. Tipton v. Loker, 230 So.2d 125, 127 (La. App. 1st Cir.1969).
In the case sub judice, defendant asked for and was given by the casinos a transfer of value in the form of chips. He signed the instruments given by the two casinos to acquire chips. The fact that the casinos gave defendant a sum of money in the equivalent of chips, does not render the markers given for the chips void for want of consideration. Defendant did not have to gamble with the chips. He could have walked out of the casinos with them or he could have converted them to cash and then walked out. Defendant incurred a debt for the chips received.
*951 Defendant decided to acquire some chips and, of his own volition, chose to participate in gaming activities. Thus, after defendant acquired the chips from each of the respective casinos, he freely chose to use the chips in gaming and lost. Whether his subsequent use of the chips to engage in gaming activities would be considered legal or illegal gaming under La. C.C. arts. 2983 and 2984 is of no moment, since the underlying obligations, i.e., the exchange of the checks for the chips, are the obligations plaintiff seeks to enforce.
Accordingly, we find that the trial court erred in finding, as a matter of law, that the debts sued upon in these consolidated cases are non-actionable.

CONCLUSION
Based on these reasons, the trial court's judgment granting the motion for summary judgment in favor of the defendant, Craig A. Major, and dismissing the claims of plaintiff, TeleRecovery of Louisiana, Inc., is reversed. The matter is remanded for further proceedings. All costs of this appeal are assessed against the defendant.
REVERSED AND REMANDED.
WEIMER, J., concurs and assigns reasons.
WEIMER, Judge, concurring.
I concur in the decision to reverse the granting of the motion for summary judgment.
This matter is before the court on defendant's motion for summary judgment. In support of the motion for summary judgment, the defendant filed an affidavit attesting to the fact that he obtained certain sums in the form of chips which were used solely for gambling and which were all lost that day.
The affidavit executed by the defendant and quoted by the majority, clearly indicates he received value, in the form of chips.[1] As such, he did not incur a gaming debt. He incurred a debt to pay for the chips he received. What he subsequently did with these chips is of no consequence. At the time the chips were received, there was no gaming debt according to the record.
The case of Russo v. Mula, 49 So.2d 622 (La.App. 1 Cir.1950) bears mention, but is distinguishable. Mula gambled at cards at an establishment operated by Russo. When Mula ran out of cash, he issued three checks totaling $800.00, received chips from the plaintiff, gambled, and lost. The next day, he issued another check for $800.00 to pay for the gambling debt already incurred. The court specifically noted, "[I]t cannot be denied that Mula lost heavily in these card games, and that the check sued upon was issued to cover the greater portion of these losses." Id. at 623. Because LSA-C.C. arts. 2983 and 2984 prohibit an action to recover a gaming debt, the court of appeal affirmed the trial court's determination that the gambler, Mula, was not liable for the $800.00 check issued to pay a gambling debt already incurred.[2]
*952 Louisiana Civil Code articles 2983 and 2984 evidence a clear intent to prevent an action for gaming debts. See also Green v. Capital Insurance Company, 623 So.2d 136, 139 (La.App. 1 Cir.1993) which cites Russo for the proposition that a check issued in payment of gambling debts is not collectable as in violation of LSA-C.C. art. 2983 and public policy.[3] Legislation to prevent an action for gaming debts is not contrary to legislation permitting various forms of legalized gaming. It is not inconsistent to permit gaming, but to prevent the enforcement of gaming debts. The situation is simpledo not allow gaming on credit. The public policy of protecting those who are problem gamblers could very well be served.
We are guided by the requirement that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. See LSA-C.C. art. 9.
As indicated above, Articles 2983 and 2984 can be reconciled with the laws which were enacted to permit gaming. These articles date back to 1808 when the Civil Code was enacted and they have not been repealed or modified. One cannot assume modification or repeal by implication as urged by the plaintiff due to the subsequent enactment of legislation legalizing gaming. See La. Const. art. XII, § 6(B); see also LSA-R.S. 27:1 et seq. (formerly LSA-R.S. 4:501 et seq. and LSA-R.S. 4:601 et seq.).
Nevertheless, I believe, based on the record before us, which primarily consists of the affidavit of the defendant, there was a contemporaneous exchange of valuethe defendant received the chips. As such, this matter does not involve a gaming debt.[4]
Although one may not have an action on a gaming debt, as indicated above, because this matter did not involve a gaming debt, the district court erred in granting the motion for summary judgment in favor of the defendant. I would remand for further *953 proceedings consistent with this opinion.
NOTES
[1] Although plaintiff alleges in its petition that one of the checks was dated December 26, 1996, a review of the copies of the instruments in the record indicate that they were all dated December 26, 1995.
[2] La. R.S. 14:90 expressly exempts from the crime of gambling the intentional conducting of gaming activities upon a riverboat as defined and authorized in R.S. 4:501 through R.S. 4:562, now R.S. 27:41-113.
[1] I would pretermit a discussion on the issue of whether the instruments defendant signed to receive the chips were checks because this issue, although raised in the answer, was neither raised in the motion for summary judgment nor briefed in this court. These instruments have been variously referred to as markers or checks or documents. There was no evidence introduced from which we can determine their exact legal status.
[2] There is some broad language in Russo that would seem to aid the defendant's position.

Our jurisprudence is uniform to the effect that courts will not entertain actions to recover what has either been won or lost at gambling.
. . . .
[O]ne who conducts a gambling establishment and furnishes money or credit to one engaged in gambling in such establishment has no action to recover on what he had furnished or loaned.
Even though we would find with plaintiff on the facts, that he furnished Mula with currency in return for Mula's checks, we could not give him judgment because the game in which Mula was engaged was conducted and promoted by plaintiff, and the money he advanced to Mula was advanced for the purpose of covering the losses Mula suffered in the game. It is inconceivable that the persons who cashed Mula's checks and advanced him this money were ignorant of the purpose for which Mula needed this money.
Of course, it is likewise clear that if Mula was given chips for his checks, as he maintains, plaintiff could fare no better.
Russo, 49 So.2d at 623-624, (La.App. 1 Cir. 1950). This language is clearly dicta. Additionally, Russo was decided when most forms of gambling were illegal. See LSA-R.S. 14:90 as it existed in 1950. Clearly, the card game conducted by Russo was illegal. There is no allegation in the case sub judice that the gaming in which the defendant engaged was illegal.
See also Domino v. LaBord, 99 So.2d 841 (La.App. 1 Cir 1957), writ denied, (1958) (also distinguishable because checks were issued to cover gambling losses).
I note the existence of Carnival Leisure Industries, Ltd. v. Aubin, 93-2878 (5 Cir. 6/2/95), 53 F.3d 716 and Carnival Leisure Industries, Ltd. v. Aubin, (5 Cir.1991), 938 F.2d 624, which support the defendant's position. However, I chose not to follow these cases. I believe my analysis relative to the fact the defendant received value in the form of chips, results in a determination the case sub judice does not involve gaming debts. Also, we are not bound by these cases which were decided based on Texas law.
[3] It is of interest Article 2983 uses the word "gaming," as opposed to "gambling," given the judicial interpretation of that term. See Polk v. Edwards, 626 So.2d 1128 (La.1993) and La. Const. Art. XII, § 6(B) which provides: "Gambling shall be defined by and suppressed by the legislature."
[4] Additionally, I note the provisions of LSA-R.S. 27:101 and 266 prohibit persons holding a gaming license or anyone acting in their stead from cashing or accepting in exchange for the purchase of tokens, chips, or electronic cards certain specifically listed checks or instruments such as payroll checks. Implicit is the fact that other types of instruments, not listed, may be accepted in exchange for chips, etc. Neither of the parties briefed or argued this issue. Although those provisions were enacted effective May 1, 1996, the previous provisions, LSA-R.S. 4:559.1 and 666, provided essentially the same prohibitions.