738 So.2d 662 (1999)
TeleRECOVERY OF LOUISIANA, INC.
v.
Lance D. GAULON.
No. 98-CA-1363.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*663 Edmund J. Schmidt, III, Jefferson, Louisiana, Attorney for Defendant-Appellant Lance D. Gaulon.
Stanley C. Kottemann, Jr., Kenneth H. Zezulka, Stanley C. Kottemann, Jr. & Associates, Metairie, Louisiana, Attorneys for Plaintiff-Appellee TeleRecovery of Louisiana, Inc.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
The primary issue before us is whether a casino patron's markers for gambling debts are enforceable negotiable instruments subject to the penalties imposed by the Nonsufficient Funds Checks statute.
TeleRecovery of Louisiana, Inc. filed suit on December 29, 1995 alleging that Lance D. Gaulon issued two checks to the Belle of Baton Rouge casino, totaling $10,000 and drawn on the First National Bank of Commerce; that payment of the checks had been refused by the drawee as NSF; and that the original creditor had assigned the account to plaintiff. Plaintiff alleged it had made written demand of defendant to no avail. Pursuant to the Nonsufficient Funds Checks statute (La. R.S. 9:2782), plaintiff sought to recover twice the amount of the checks plus service charges, attorney's fees, legal interest and costs.
On February 22, 1996 plaintiff confirmed a default judgment against defendant in the amount of $20,000.00, subject to any credits, with a service charge of $15.00 or 5% of the face amount of each check, whichever is greater, with interest from the date of judicial demand until paid, reasonable attorney's fees in the amount of 25% of the principal and interest, and for all costs.
Defendant filed a rule to set aside the default judgment or, alternatively, for a new trial, contesting the applicability of La. R.S. 9:2782. Defendant argued that the statute was not intended to cover gambling markers and the markers did not constitute checks within the meaning of the statute. Defendant asserted further that the judgment should be set aside because plaintiff had failed to establish a prima facie case. Specifically, defendant argued that plaintiff failed to attach the credit payment agreement on which the markers were predicated and failed to prove that the signature was authentic and that the casino's rights had been assigned to plaintiff.
*664 On April 16, 1996 the trial court denied the motion for new trial as to the principal amount of the judgment in the amount of $10,000.00, plus interest and costs, and the court assessed attorney's fees of $2,000.00. The court granted new trial, however, on the issue of applicability of the bad check statute.
Defendant appealed, but this Court dismissed his appeal as premature. We ordered the trial court to hold the judgment on the principal amount in abeyance and reserved defendant's appeal rights pending the trial court's determination of the applicability of the NSF check statute. TeleRecovery of Louisiana, Inc. v. Gaulon, 96-626 (La.App. 5th Cir. 11/26/96), 685 So.2d 341.
After remand plaintiff filed a motion for summary judgment on the applicability of La. R.S. 9:2782. The district court ruled in favor of plaintiff, finding that the markers are checks under negotiable instruments law, that the plaintiff had complied with the other requirements of the NSF check statute, and that the plaintiff is entitled to penalties as set forth in La. R.S. 9:2782. On May 21, 1998 the trial court signed a judgment awarding plaintiff $10,000.00 in penalties, together with legal interest from date of judicial demand until paid, attorney's fees of 9.25% of the award and the interest, and all costs. The judgment specified the award was in addition to the amounts awarded in the judgment of April 16, 1996. Defendant appeals.
On appeal defendant asserts the trial court erred in rendering judgment in favor of plaintiff under the NSF check law because gambling markers are unenforceable debts, in granting judgment because the markers in this case are not negotiable instruments, and in granting default judgment because plaintiff produced insufficient evidence to obtain a default judgment.

ENFORCEABILITY OF GAMBLING MARKERS
Defendant asserts that La. C.C. art. 2983 makes gambling debts unenforceable. Article 2983 states, "The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing."
Our state constitution provides, "Gambling shall be defined by and suppressed by the legislature." La. Const. Art. 12, § 6(B). The legislature's right to decide what is gambling that must be suppressed has been upheld by our Supreme Court. Polk v. Edwards, 626 So.2d 1128 (La.1993). Legalized forms of gambling, such as licensed bingo, keno and horseracing, having consistently been held to be exempt from those provisions. Lauer v. Catalanotto, 522 So.2d 656 (La.App. 5 Cir.1988). Riverboat gaming activities are defined and authorized by statute (La. R.S. 27:41 to 27:113) and are exempted from the statutory definition of gambling in the Louisiana Criminal Code. La. R.S. 14:90(D).
La. R.S. 27:43 authorizes conduct of gaming activities on a riverboat in accordance with provisions of the Louisiana Riverboat Economic Development and Gaming Control Act, "notwithstanding any other provision of law to the contrary." Accordingly, there is no merit to the argument that the debt is unenforceable because incurred in an illegal activity.

ARE THE MARKERS NEGOTIABLE INSTRUMENTS?
Second, defendant contends the bad check law cannot be applied here because the markers are not negotiable instruments. He contends the markers are sui generis and do not fall within the narrow precepts of the bad check law, which must be strictly construed.
La. R.S. 10:3-104 defines "negotiable instrument" as follows, in pertinent part:
(a) Except as provided in Subsections (c) and (d), "negotiable instrument" *665 means an unconditional promise or order to pay a fixed amount of money ... if it:
(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
(2) is payable on demand or at a definite time; and
(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money....
(b) "Instrument" means a negotiable instrument.
(c) An order that meets all of the requirements of Subsection (a), except Paragraph (1), and otherwise falls within the definition of "check" in Subsection (f) is a negotiable instrument and a check.
* * *
(e) An instrument is a "note" if it is a promise and is a "draft" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.
(f) "Check" means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."
Defendant argues the casino markers are conditional because they refer to another document outside the face of the markers and, thus, do not satisfy the requirement of "unconditional promise to pay."
The following emulation approximates the markers in this case:
Name: Lance D. Gaulon #BJ9I No.
B0865
To: FNBC Bank
 _______________ Branch Date: 6-2 19
95
 Metairie LA 
 City State
PAY TO THE ORDER OF BELLE OF BATON ROUGE CASINO $ 5000 -- 
 FIVE THOUSAND & NO ________ DOLLARS
I authorize completion of the payee, any missing amounts, a date and all banking information, including, but not limited to, any bank or bank
accounts that I now have or may have in the future, the bank account number thereof and the name, address and branch of any such bank. I waive
any right to stop payment to agree to pay all costs and attorneys fees incurred in the collection of this instrument. I agree that any action concerning
this instrument will be governed by the laws of the State of Louisiana and hereby submit to the jurisdiction of any court, state or federal, in the State
of Louisiana. I agree to payment according to the terms of the Credit Payment Agreement previously executed by the undersigned.
ACCT. # XXXXXXXXX SIGNED: [Lance D. Gaulon] 
Each marker bears on its face the statement, "I agree to payment according to the terms of the Credit Payment Agreement previously executed by the undersigned." Defendant contends this requires a holder to examine another document to determine rights with respect to payment, making the marker conditional and nonnegotiable.
Plaintiff rebuts by arguing that in order to be conditional the instrument must state that it is conditioned by, subject to or governed by another writing, and mere reference to another writing on the face of the instrument does not make it conditional. La. R.S. 10:3-106(a).
La. R.S. 10:3-106(a) provides,

*666 Except as provided in this Section, for the purposes of R.S. 10:3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional.
Although Louisiana's adoption of the Uniform Commercial Code is recent, the underlying principle in question here has long been part of the law governing negotiable instruments in Louisiana. The issue-the type of reference to another document that makes a promise to pay conditional and an instrument non-negotiable-has seen little litigation in this state, however.
In Newman v. Schwarz, 180 La. 153, 156 So. 206, 207 (1934), the court held that the statement "Rent Note Subject to Terms of Lease Dated May 2, 1927," written in red ink across the face of the note, bore no relation to the unconditional promise of the maker to pay the notes, amounted to "nothing more than a statement of the transaction which gives rise to the notes and which serves to identify them with the transaction," and did not render the note non-negotiable.
In Tyler v. Whitney-Central Trust & Sav. Bank, 157 La. 249, 102 So. 325, 329 (1924), the court concluded that because the expression "as per lease this date" was found in a separate sentence from the promise to pay it bore no relation whatever to the promise. "In fact, the entire sentence in which the reference appears amounts to nothing more than a statement of the transaction which gives rise to the notes and which serves to identify them with the transaction. Such a statement and means of identification do not render the notes nonnegotiable."
We find the following general statement useful:
(4) Reference to other instruments or agreements. If the note or draft states that it is given "as per" a transaction, "in accordance with" a transaction, or that it "arises out of" a transaction, this does not destroy negotiability, but, if the instrument states that it is "subject to" or "governed by" any other agreement, then negotiability is destroyed. [Emphasis in original; footnotes omitted.]
2 Frederick M. Hart & William F. Willier, Bender's U.C.C. Service, Commercial Paper § 1B.04[3] (1995).
Examining the language at issue in this case, we conclude it does not destroy negotiability of the marker. Its location on the last line of the instrument as well as its used of "according to" simply references another document but does not make payment conditional.

APPLICABILITY OF NSF CHECK STATUTE
Having determined that the marker was a negotiable instrument, we must decide whether the trial court properly held the NSF check law applicable. La. R.S. 9:2782 provides for award of damages and attorney's fees against the drawer of a dishonored check when certain conditions are fulfilled. It states, in pertinent part:
A. Whenever any drawer of a check dishonored for nonsufficient funds fails to pay the obligation created by the check within thirty days after receipt of written demand for payment thereof delivered by certified or registered mail, the drawer shall be liable to the payee or a person subrogated to the rights of the payee for damages of twice the amount so owing, but in no case less than one hundred dollars plus attorney fees and court costs.
B. The payee may charge the drawer of the check a service charge not to exceed fifteen dollars or five percent of the face amount of the check, whichever *667 is greater, when making written demand for payment.
C. (1) Before any recovery under Subsection A of this Section may be claimed, a written demand in substantially the form which follows shall be sent by certified or registered mail to the drawer of the check at the address shown on the instrument:
[Form omitted.]
(2) Notice mailed by certified or registered mail evidenced by return receipt to the address printed on the check or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making the check.
(3) It shall be prima facie evidence that the drawer knew that the instrument would not be honored if notice mailed by certified or registered mail is returned to the sender when such notice is mailed within a reasonable time of dishonor to the address printed on the instrument or given by the drawer at the time of issuance of the check.
Defendant does not contest that plaintiff followed the formalities of the statute, but argues that the NSF check law cannot apply because "gambling markers do not operate like checks, but more like a promise to pay." Defendant asserts that when the state legislature enacted the law in 1977 "it never envisioned that the law would be used by casinos as leverage against their patrons." Instead, defendant insists, the law was enacted "to discourage consumers from floating bad paper in the stream of commerce." Defendant concludes, "It would be unconscionable to allow casinos to wield the penalizing nature of the Bad Check Law against delinquent gamblers."
This argument has no merit. Legalization of riverboat gaming activities has placed casino operations in the stream of commerce. The marker fits within the definition of a check in La. R.S. 10:3-104(f); therefore, the trial judge did not err in applying the NSF check statute in these circumstances.

PROPRIETY OF DEFAULT JUDGMENT
Alternatively, defendant contends the default judgment should be reversed because plaintiff failed to establish a prima facie case.
First, defendant contends plaintiff failed to establish the arrangement between the defendant and the casino which led to defendant's signing the markers. We find no merit to this argument, however, because this is simply a case of recovery on NSF checks, not a suit on open account.
Second, defendant argues that plaintiff failed to show it had the right to sue on the markers because the markers were made payable to the Belle of Baton Rouge Casino, not to TeleRecovery. Defendant contends that plaintiff failed to prove its right to recover the instruments on their face.
Plaintiff asserts, however, that defendant failed to raise the issue properly by an exception of no right of action; further, plaintiff asserts it proved standing by the affidavit of its collections manager, who averred the notes had been assigned to TeleRecovery. With no rebutting evidence in the record, plaintiff contends, the affidavit is prima facie proof of plaintiff's right to sue on the markers.
We agree with plaintiff. La. R.S. 10:3-203(b) provides that transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course. The affidavit submitted in connection with the confirmation of the default was competent evidence that TeleRecovery was the transferee of the markers from the casino.
Finally, we note that plaintiff-appellee requests an increase in the attorney's fee *668 award to reflect the prosecution of the appeal. We need not address that issue, however, because appellee failed to appeal or to answer the appeal. Accordingly, we cannot grant further relief in favor of appellee. La. C.C.P. Arts.2082, 2133.
For the foregoing reasons, the judgment is affirmed. All costs are assessed against the appellant.
AFFIRMED.