748 So.2d 57 (1999)
STATE of Louisiana, Plaintiff-Appellee,
v.
Swawn DEAN, Defendant-Appellant.
No. CR99-475.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
*58 Robert Richard Bryant, Jr., Mike K. Stratton, Lake Charles, for State.
Paula C. Marx, Crowley, for Shawn Dean.
Before: DECUIR, AMY and PICKETT, Judges.
PICKETT, Judge.
Defendant was convicted of issuing worthless checks over $500, in violation of La.R.S. 14:71. Defendant was sentenced to two (2) years at hard labor, suspended, with five (5) years supervised probation. Defendant issued the checks to Players Casino. Defendant argues the statutory provisions that prohibit enforcement of a gambling debt prevents prosecution under La.R.S. 14:71. For the following reasons, we affirm and remand.

FACTS
On December 28, 1994, the Defendant, Shawn Dean, was charged by bill of information with one count of issuing worthless checks, a violation of La.R.S. 14:71. The charge consisted of five checks written to Players Lake Charles, Inc., in an aggregate amount of $21,000.00. On January 3, 1995, the Defendant pled not guilty to the charge.
The Defendant filed a motion to quash the charges against him, arguing that this state does not allow the enforcement of gambling debts. At a hearing held September 22, 1995, the trial court ordered the parties to file briefs and took the matter under advisement without any oral argument.
The trial judge issued an opinion on November 4, 199, denying the motion to quash. Thereafter, on March 2, 1999, the Defendant pled guilty to the charge, reserving his right to appeal the trial court's denial of his motion to quash. That same day, the Defendant was sentenced to two years at hard labor, suspended, and five years supervised probation.
The general conditions of La.Code Crim.P. art. 895 were imposed as well as the following special conditions: 1) payment of restitution to the victim in the amount of $9,000.00; 2) payment of the District Attorney's fees in the amount of $50.00; 3) payment of court costs; 4) payment of $20.00 supervision fee each month; and 5) no checking account while on probation. The Defendant now appeals his conviction, alleging two assignments of error.
ASSIGNMENTS OF ERROR
1. Louisiana law grants no action for the payment of what has been won at gaming or by bet; therefore, as the Bill of Information charging issuance of worthless checks in this case is based on the issuing of checks written to guarantee payment of future riverboat gaming debts the court erred in denying Defendant's Motion to Quash herein.
2. The trial court erred in ordering restitution to Players Casino in the sentence imposed.

DISCUSSION

MOTION TO QUASH
La.Code Crim.P. art. 531 provides that "[a]ll pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of `not guilty' and of `not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash." A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e. pleas which do not go to the merits of the charge. At a hearing on *59 such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. State v. Pertuit, 98-1264 (La.App. 5 Cir. 4/27/99); 734 So.2d 144 citing State v. Byrd, 96-2302 (La.3/13/98); 708 So.2d 401. La.C.Cr.P. art. 531-534. "A motion to quash is treated much like an exception of no cause of action in a civil suit." State v. Perez, 464 So.2d 737 (La.1985).
In this case, the Defendant asserted a motion to quash arguing that a conviction under the worthless check statute, La.R.S. 14:71, is improper because it is simply a guise to collect a gambling debt.
The State has not disputed the procedural appropriateness of the motion to quash. In State v. Robinson, 97-170 (La. App. 3 Cir. 6/4/97); 696 So.2d 207, 209, writ denied, 97-1805 (La.12/12/97); 704 So.2d 1199, this court found the State waived any objections to the propriety of the grounds raised in the Defendant's motion to quash by "agreeing that such grounds could be presented for review as part of his Crosby plea." Likewise, without a finding on the appropriateness of the motion, we find the State in the present case has waived any objection to the grounds raised in the Defendant's motion to quash.

ASSIGNMENTS OF ERROR NO. 1
The Defendant argues the trial court erred in denying his motion to quash because the charge of issuing worthless checks is based on the issuing of checks written to guarantee payment of future riverboat gaming debts.
Defendant supports this assertion citing La.Civ.Code art. 2983 which prohibits the collection of a gaming debt. Defendant's position is that if Players could not collect the debt in a civil action, the State should not be allowed to enforce the debt in a criminal action.
La.Civ.Code art. 2983 provides in pertinent part:
The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing ...
(Emphasis added)
We find reliance on La.Civ.Code art. 2983 misplaced. Primarily, case law applying La.Civ.Code art. 2983 predates the legalization of gaming and the 1996 enactment of the Louisiana Gaming Control Law. Additionally, La.Civ.Code art. 2983 provides no action to collect monies won at gambling. Recent civil case law also supports this finding. See Telerecovery of Louisiana, Inc. v. Gaulon, 98-1363 (La. App. 5 Cir. 6/1/99); 738 So.2d 662; Telerecovery of Louisiana, Inc. v. Major, 98-1192 (La.App. 1 Cir. 5/18/99); 734 So.2d 947.
However, this is an instance where Defendant cashed a check at a casino and choose to gamble it away. Alternatively, he could have chosen to cash out and leave the casino. Defendant's assignment of error claiming the checks "guarantee payment of future riverboat gaming debts" is an argument only available in hindsight. The necessary presupposition is that Defendant intended to come out in the red which is contrary to the very lure of gambling "winning big."
The question here is not whether casinos make it too easy for habitual gamblers to squander everything away. That is an issue that should be regulated by the Legislature and Gaming Control Board. What we have here is a legitimate business providing a check cashing service to its customers. The check was presented and dishonored. The Defendant is then prosecuted for writing worthless checks.
We believe this is a case of first impression. Are Defendants exempt from prosecution because they pass a bad check to a casino? Imagine this scenarioDefendant gambles all his cash away and issues a worthless check to the cashier to continue gambling. Defendant then comes out ahead at the slot machines and calls it a *60 night, but never makes good on the worthless check.
Defendant would argue that he could not be prosecuted because the worthless check was issued to secure future gambling debts. There is a potential this would lead to absurd results and is unjustly onerous to what our Legislature has deemed a legal business, riverboat casinos. The Defendant wants to be exonerated because of the nature of the business. However, an alcoholic who issues a worthless check to a liquor store will still be prosecuted.
The public policy behind the legalization of gaming in Louisiana is expressed in several chapters of the Louisiana Gaming Control Law, La.R.S. 27:1 et seq.
La.R.S. 27:2 begins:
Public policy of state concerning gaming; status of licenses, contracts and permits
(A) The legislature hereby finds and declares it to be the public policy of the state that the development of a controlled gaming industry to promote economic development of the state requires thorough and careful exercise of legislative power to protect the general welfare of the state's people by keeping the state free from criminal and corrupt elements. The legislature further finds and declares it to be the public policy of the state that to this all persons, locations, practices, associations, and activities related to the operation of licensed and qualified gaming establishments and the manufacture, supply, or distribution of gaming devices and equipment shall be strictly regulated. (Emphasis added).
La.R.S. 27:42(A)(1) states:
The development of a historic riverboat industry is important to the economy of the state of Louisiana in that it will assist in the continuing growth of the tourism industry and thus will benefit the general welfare of our citizens and create new jobs ...
La.R.S. 27:42(A)(2) states that an "integral part of riverboat operation and profitability is the offering of regulated gaming, among other activities." La.R.S. 27:71(4) continues to require that an applicant for a gaming license provide a summary of "[p]rocedures within the cashier's cage for the receipt, storage, and disbursal of chips, cash, and other cash equivalents used in gaming ..." (Emphasis added). "Other cash equivalents" presumes checks or some other form of negotiable instrument. La.R.S. 27:202(A) further expresses the State's public policy concerning gambling:
The legislature hereby recognizes that the gaming operations and activities are unique activities for state government and that a corporate structure will best enable the casino gaming to be managed in an entrepreneurial and business-like manner ...
Finally, La.R.S. 27:101 prevents the casinos from accepting the following instruments for security for gambling debts or in exchange for cash: payroll checks, family assistance checks, title of ownership, any privileges, mortgage, motor vehicle, manufactured home or immovable property.
The acceptance of personal checks is not prevented by the Gaming Control Law. Presumably, Players followed the appropriate procedures in cashing the checks. Furthermore, the casino was acting in the interest of profitability and in an entrepreneurial and business-like fashion. Therefore, the public policy as described in the Louisiana Gaming Control Law was satisfied.
Under current law, we find the Defendant may be prosecuted for writing worthless checks to Players Riverboat Casino. The trial court did not err in denying the motion to quash.

ASSIGNMENT OF ERROR NO.2
Defendant argues the trial court erred in providing restitution to Players. Defendant provides no grounds for vacating the restitution beyond the argument for his motion to quash. Restitution is *61 provided for in La.R.S. 14:71(G). However, as discussed below, we remand to the trial court to provide a payment plan for the restitution. We find Defendant's assignment of error is meritless.

ERRORS PATENT:
La.R.S. 14:71(G) requires the Defendant to pay restitution in the amount of the checks written plus a fifteen dollar per check service charge. The checks written in the present case totaled $21,000.00. The trial court, however, ordered restitution for only $9,000.00. The State has not complained regarding the lenient sentence and, therefore, it will not be recognized. State v. Hines, 95-111 (La.App. 3 Cir. 10/4/95); 663 So.2d 199, writ denied, 95-2686 (La.2/6/96); 667 So.2d 528, citing State v. Jackson, 452 So.2d 682 (La.1984).
However, the trial court failed to establish a payment plan for the restitution imposed. In State v. Moore, 595 So.2d 334 (La.App. 3 Cir.1992), appeal after remand, 614 So.2d 145 (La.App. 3 Cir. 1993), and State v. Lozado, 594 So.2d 1063 (La.App. 3 Cir.1992), this court recognized as an error patent the trial court's failure to provide a specified payment plan. In Lozado, the court stated, "the jurisprudence has stated that in ordering restitution and payment according to a pay plan, it is necessary that the sentencing court announce the payment formula." Lozado, 594 So.2d at 1066. In Moore, the court stated, "[b]ecause LSA-C.Cr.P. Art. 895.1 is clear that the sentencing court must announce the payment formula in ordering restitution under a payment plan, we remand the case with instructions that a specified payment schedule be imposed if restitution is ordered." Moore, 595 So.2d at 337. Therefore, we remand the case to the trial court for the establishment of a specified payment plan for the payment of the $9,000.00 restitution.
For these reasons, the judgment of the trial court denying the motion to quash is affirmed. We remand for the purposes of establishing a specific payment plan for the restitution of $9,000.00.
AFFIRMED AND REMANDED IN PART.