| JAN W. CLAIBORNE, Judge Pro Tem.
This appeal involves the amount of money awarded to plaintiff, TeleRecovery of Louisiana, Inc., in a confirmation of default judgment against defendant, Kenneth Rayborn.[2] Plaintiff brought this collection suit as assignee of the Belle of Baton Rouge (casino), to recover the amounts for three dishonored checks (markers) issued by defendant to the casino. For the following reasons, we affirm.
BACKGROUND
Plaintiff filed suit entitled “Petition on NSF Check” on October 13, 1998, alleging: that on September 11, 1996, defendant had issued three checks (gambling markers) to the casino drawn on the Tuscaloosa Bank in Denham Springs, Louisiana, totaling $5,000.00[3] and personally signed by defendant; that payment of all three checks had been refused by the drawee bank, which returned the checks marked “Account Closed”; that the casino had assigned the account to plaintiff for collection; and that despite amicable demand, defendant had failed to pay the amounts due. Attached to the petition were copies of the three checks, a copy of the demand letter mailed to defendant by certified mail, a copy of the returned receipt for the demand letter, and a copy of the casino’s assignment of the account to plaintiff. Pursuant to La. R.S. 9:2782, plaintiff sought to recover twice the amount of the checks, $10,000.00, plus service charges, attorney’s fees, legal interest and court costs.
Defendant was served with the petition on October 20, 1998, but he made no payment of the debt nor did he answer the petition. On June 11,1999, .^preliminary default judgment was entered.[4] On October 17, 2000, plaintiff filed an affidavit of correctness of account and of non-military service, along with the required attorney’s certification verifying domiciliary service and proof of the claim, and praying for confirmation of a default judgment against the defendant. The language submitted in both the preliminary default judgment and in the final judgment was essentially the same, stating that the amount awarded was to be twice the face amount of the checks or $10,000.00 total, plus the service charge, interest, attorney’s fees and costs all permitted by the NSF statute. However, when the trial judge signed the confirmation of default judgment on November 10, 2000, without issuing reasons, the amount awarded was scratched through and altered to award only $5,000.00, the face amount of the checks, but still included a service charge, interest, attorney’s fees and court costs. Plaintiff appealed devolutively seeking an increase in the amount awarded.[5] Defendant did not answer the appeal.
*690 LAW AND ANALYSIS
Plaintiff argues that the trial court erred in failing to render judgment for double the face value of the dishonored checks pursuant to the NSF statute, La. R.S. 9:2782. The trial court was apparently not requested to provide written reasons for reducing the amount awarded to the face value of the checks while still awarding a service charge, attorney’s fees, interest and court costs. There is no transcript in the record of any reasons the .trial court judge may have given orally.
At the time defendant issued the three checks in 1996, La. R.S. 9:2782[6] provided as follows:
[ 4A. Whenever any drawer of a check dishonored for nonsufficient funds fails to pay the obligation created by the check within thirty days after receipt of written demand for payment thereof delivered by certified or registered mail, the drawer shall be liable to the payee or a person subrogated to the rights of the payee for damages of twice the amount so owing, but in no case less than one hundred dollars plus attorney fees and court costs.
B. The payee may charge the drawer of the check a service charge not to exceed fifteen dollars or five percent of the face amount of the check, whichever is greater, when making written demand for payment.
C. (1) Before any recovery under Subsection A of this Section may be claimed, a written demand in substantially the form which follows shall be sent by certified or registered mail to the drawer of the check at the address shown on the instrument:
‘You are hereby notified that a check numbered_, issued by you on _ (date), drawn upon _, (name of bank), and payable to _, has been dishonored. Pursuant to Louisiana law, you have thirty days from receipt of this notice to tender payment in full of the amount of the check plus a service charge of fifteen dollars or five percent of the face amount of the check, whichever is greater, the total amount due being_ Unless this amount is paid in full within the thirty-day period, the holder of the check may file a civil action against you for two times the amount of the check or one hundred dollars, whichever is greater, plus any court costs and reasonable attorney fees incurred by the payee in taking the action.”
(2) Notice mailed by certified or registered mail evidenced by return receipt to the address printed on the check or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making the check.
(3) It shall be prima facie evidence that the drawer knew that the instrument would not be honored if notice mailed by certified or registered mail is returned to the sender when such notice is mailed within a reasonable time of dishonor to the address printed on the instrument or given by the drawer at the time of issuance of the check. (Emphasis added.)
It has previously been held that the NSF check statute applies to a gambling marker because the instrument fits within *691 the definition of a check. See TeleRecovery of Louisiana, Inc. v. Gaulon, 98-1363, p. 9 (La.App. 5th Cir.6/1/99), 738 So.2d 662, 667, writ denied, 99-1906 (La.10/8/99), 751 So.2d 224.[7] It has also been held that such markers are enforceable. See TeleRecovery of Louisiana, Inc. v. Major, 98-1191 and 98-1192 (La.App. 1st Cir.5/18/99), 734 So.2d 947, writ denied, 99-2293 (La.11/12/99), 750 So.2d 196.[8] Therefore, the only issue before us is whether the trial court was correct as a matter of law in not awarding twice the face value of the dishonored checks.
The reason the checks were dishonored by the bank in the instant case was because the defendant’s account was closed. Plaintiff argues that La. R.S. 9:2782 is a “bad check” statute, not just an “insufficient funds” statute. The statute specifically refers to a “check dishonored for nonsufficient funds” in the first sentence of Subsection A. The statute also refers to a check that has simply been “dishonored” in the form letter provided in Subsection C. To be “dishonored” means that payment has been refused. See La. R.S. 15:428.[9] Certainly when an account has been closed, there can be no argument that there are no funds by which to pay any check presented. It follows that a check marked “Account Closed” could just as easily be marked “NSF,” because when there are absolutely no funds available in an account that has been closed, obviously there are insufficient funds for payment. If there are no funds in the account or the account has been closed, there are nonsuf-ficient funds to justify honoring it.[10]
|fiThe meaning of a statute is to be interpreted by looking to all the sections taken together, so that no section, clause, sentence or word becomes superfluous or meaningless. Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672. The paramount consideration in interpreting a statute is ascertaining the legislature’s intent and the reasons that prompted the legislature to enact the law. Southlake Development Co. v. Secretary of Dept. of Revenue and Taxation for State of La., 98-2158, p. 4 (La.App. 1st Cir.11/5/99), 745 So.2d 203, *692 205, writ denied, 99-3405 (La.2/4/00), 754 So.2d 235.
We conclude that La. R.S. 9:2782 provides for damages pertaining to dishonored checks, including those dishonored due to a closed account, not just specifically for checks dishonored due to insufficient funds on deposit, when the formalities of the statute have been strictly followed.
The only other basis for the court to deny recovery of twice the amount owed is if the statutory prerequisites were not strictly followed. Subsection C(3) of the statute provides that if notice of dishonor in the form of written demand mailed by certified or registered mail is returned to the sender (for whatever reason), it is nevertheless prima facie evidence that the drawer knew the instrument would not be honored, provided such notice is mailed within a reasonable time to the address printed on the instrument or given by the drawer at the time of the issuance of the check.[11] It is not clear from the provisions of the statute however, that actual knowledge of the drawer is a necessary element of the claim for double recovery in fight of the language of Subsection C (2).[12]
|7The statute, however, is clear, at least for the purposes of the issues before us, the following elements are necessary before there may be double recovery:
1) Written demand containing a notification of dishonor and setting forth the penalties for failure to pay (as set forth in Section C(l));
2) Delivery by certified or registered mail;
3) Demand mailed to the drawer of the check at the address shown on the instrument;
4) Proof of receipt
(a) by unspecified proof
(b) by return receipt; and
5) Non-payment within thirty days of receipt of written demand.
In the present case the demand letter was not mailed to the address shown on the instruments. The address shown on the markers is Kennith R. Rayborn, 12222 Florida Blvd., Livingston, LA 70754 USA.[13] The notice and demand letter were mailed to the defendant at 1222 Florida Blvd., Livingston, LA 70754.[14] It would appear there was a failure to satisfy the strict requirements of the statute in that the demand letter was not properly addressed.
We find that the trial court judgment is inconsistent. If double recovery is not *693 available, then service charges, and statutory attorney’s fees are likewise unjustified. See Sangid v. Fleming, 530 So.2d 1231 (La.App. 2d Cir.1988). However, we are prohibited from modifying the judgment in favor of the defendant when the defendant has neither appealed nor answered the appeal. See Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191; La.Code Civ. P. arts. 2082 and 2133.
1 «CONCLUSION
For these reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to plaintiff-appellant, TeleRecov-ery of Louisiana, Inc.
AFFIRMED.
PARRO, J., concurs and assigns reasons.

. The names of the parties throughout the record reflect two different spellings: Telere-covery of Louisiana, Inc. or TeleRecovery of Louisiana, Inc., and Kenneth Rayborn or Kennith (Kenny) Rayborn.

. Check Number 1126 was in the amount of $2,000.00, check number 1129 was in the amount of $2,000.00, and check number 1131 was in the amount of $1,000.00.

. We note that the preliminary default judgment reflects a typographical error in that the trial judge supposedly signed on June 11, 1998. The stamped filing date on the preliminary default judgment, the final judgment and the notice of judgment all indicate that the proper year is 1999.

. In plaintiffs motion and order for devolu-tive appeal, plaintiff also sought an increase in attorney’s fees on appeal; however, plaintiff did not brief the issue. Accordingly, we decline to address the issue of attorney’s fees on appeal and deem the request to have been *690 abandoned. See Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.

. La. R.S. 9:2782 was amended in 1999 to substitute “fifteen working days” for "thirty days” and substitute "twenty-five dollars” for “fifteen dollars.” Subsection B was also amended to add, among other things, a posted notice requirement. See 1999 La. Acts No. 690, effective August 15, 1999.

. A casino marker is a form of counter check. A facsimile is reproduced in the cited case.

. Still to be resolved is an apparent conflict between the concurring opinion in the Major case and the subsequent holding of the Court of Appeal, Third Circuit, in State v. Dean, 99-475 (La.App. 3d Cir. 11/3/99), 748 So.2d 57, writ denied, 99-3413 (La.5/26/00), 762 So.2d 1101.

. La. R.S. 15:428 provides: "Whenever any check or draft shall have been drawn on any bank, whether such bank be in or out of this state, and payment shall have been refused, such check or draft with its endorsements shall be prima facie evidence, that at the time of the presentation of said check or draft, the drawer did not have the money in said bank with which to pay said check or draft.”

. A review of the jurisprudence reveals only one other case involving bad checks dishonored by a bank with a mark of "Account Closed.” In Sangid v. Fleming, 530 So.2d 1231, 1233 (La.App. 2d Cir.1988), the court reviewed a default judgment based on the issuance of two checks returned with a mark "Account Closed.” The court held that the judgment should be amended to the face amount of the checks and no attorney’s fees awarded because the claimant had not strictly complied with the provisions of the NSF statute. The court focused on the requirements set forth in the form provided in the statute: a demand letter granting thirty days to pay and warning of possible liability for two times the amount of the check plus service charges, court costs and attorney’s fees. The court found that the trial court erred in awarding attorney’s fees under the statute because the claimant failed to comply with the statute. There was no discussion about the reason why the checks were dishonored.

. Notice of dishonor was received by the plaintiff at least by October 23, 1996. The demand letter was mailed almost two years later on August 4, 1998. Suit was filed October 13, 1998. Preliminary default was entered June 11, 1999 (erroneously shown as 1998). Judgment of confirmation was signed November 11, 2000. Arguably, the element of reasonable time is lacking.

. Subsection C(2) provides that a mailing (certified or registered) of notice to the address on the instrument evidenced by return receipt is deemed receipt of notice by the persons making the check (i.e., drawer).

. This address appears on all three markers and on other records introduced in evidence. On one exhibit this address appears as Ray-born’s business address (Rayborn Grocery), and still another address on Florida Boulevard is listed as his personal address. There is no explanation in the record for the discrepancy between the address on the markers and the address to which the demand was mailed.

.It was received by Goldie M. Washburn. There is no evidence in the record that the defendant actually received the letter of demand. Having found that a clearly necessary element is lacking, we need not consider the implications of Subsection C(3) with regard to double recovery.